# Carl *v.* The State.

*Indictment for Selling Intoxicating Liquors contrary to Law.*

1. *Violation of prohibitory liquor law; what decoctions or mixtures are within statute.*—Prohibitory liquor laws are designed to prevent the sale of intoxicating liquors as a beverage, and do not apply to medicinal preparations, articles for toilet use, or for culinary purposes, of which alcohol may be a necessary ingredient; the question being one of fact for the determination of the jury, whether it was made and sold in good faith for the purpose indicated, or was intended for use as a

2

[Carl v. The State.]

beverage, and was so used; but, if made and sold in good faith as a tonic or beverage, its misuse by the purchaser, though producing partial intoxication, does not render the seller criminally liable.

2. *Evidence as to intoxicating properties of article sold.*—In a criminal prosecution for the sale of intoxicating liquors in violation of a local prohibitory liquor law, the article sold being compounded by a druggist, and the bottles labeled *"Elixir Cinchona,"* or *"Cinchona Bitters;"* it is permissible for the prosecution to prove that it was bought and used by many persons as a beverage, the use to which it was applied being illustrative of its nature and properties; and a person who had swallowed it may state its exhilarating effect on himself, and, though not technically an expert, may testify that, "in his opinion, it would produce intoxication."

From the Circuit Court of Escambia.

Tried before the Hon. John P. Hubbard.

The indictment in this case was found in October, 1887, and contained two counts; the first charging that the defendant, H. C. Carl, "sold vinous or spirituous liquors, without a license, and contrary to law;" and the second, "that he did unlawfully sell, keep for sale, or otherwise dispose of vinous, spirituous, or malt liquors, or other intoxicating beverages or bitters, within the limits of said county." On the trial, as appears from the bill of exceptions, the evidence showed that the defendant kept for sale, and had sold several bottles of "Elixir Cinchona," or "Cinchona Bitters," a tonic or mixture prepared and sold by Dr. J. W. Hale, a druggist in Montgomery, who testified, as a witness for the defendant, that the mixture "contained gentian-root, bitter orange-peel, cardeman seed, red peruvian bark, snake-root, syrup and water, and enough spirits to prevent fermentation; that there were six pints of water in a gallon of the mixture, and one pint of proof spirits; that there was not more than twenty per-cent. of spirits in the article sold, and there was not less than that in any liquid medicine manufactured or sold in any drug-store; that he lost the preparation the first time he experimented with it, and found that twenty per-cent. of proof spirits was necessary to prevent fermentation; that it was a tonic and stimulant, but not an intoxicant; that he had seen parties take it, and had seen it taken repeatedly for about three years, but had never seen the least effect of intoxication produced by it; that it was not an intoxicant, and a man could not, in his opinion, drink enough of it to make him intoxicated." W. H. O'Bannon, a witness for the prosecution, testified "that he bought from the defendant, about ten or twelve months ago, a bottle of said elixir as a medicine for his wife; that she could not take it, and he took a drink of it

[Carl v. The State.]

himself; that it made him sick, and about half drunk; that a
dose was about a table-spoonful; that it was sold as a medi-
cine all the time; that the defendant, when he went into
business a short time before, proposed that witness should
go into the business with him, said there was money in it,
and that they could have it put up in different ways to suit
customers, but said nothing about the quantity of spirits in
it; that he (witness) had been in the whiskey business for
several years, had drank whiskey, and knew the effect of it;
that said elixir had the same effect as whiskey, and would,
in his opinion, produce intoxication.  To the opinion of the
witness, as thus testified to, the defendant objected, and ex-
cepted to its admission as evidence."  The witness testified,
also, "that said elixir was sold generally in Brewton as a
beverage;" and the court admitted this evidence, against the
objection and exception of the defendant.  Other witnesses
for the prosecution, who had bought and drank the elixir,
testified to its exhilarating effects, while several practicing
physicians in Brewton, who had used and prescribed it, testi-
fied to its tonic and medicinal properties.

The court charged the jury as follows:  "Although Dr.
Hale, in the manufacture of said elixir, did not use enough
spirituous liquor to render it intoxicating in its ordinary use,
yet, if the defendant bought that article, and put into the
bottle sold to O'Bannon sufficient spirituous, vinous or malt
liquors to render it intoxicating in its ordinary use, it is such
an article as is prohibited by the statute; and if the jury
find that he sold it to O'Bannon, he would be guilty, if in
other respects his guilt was made out; and whether he put
any of such liquors in it, is for the jury to decide from the
evidence.  .  .  If the article sold by defendant to O'Ban-
non contained a sufficient quantity of liquor to produce intox-
ication in its ordinary use, although Dr. Hale put no more
liquor in it than was actually necessary to prevent it from
fermenting, and this was done by him honestly; yet it is
such an article as comes within the prohibition of the statute.
.  .  If a man goes and gets this article, and it is an intoxi-
cant in its ordinary use, and the intoxicating element is
spirituous liquor; and he uses it as a beverage, and gets
drunk in its ordinary use; it is an article prohibited by the
statute, and *he* ( ? ) would be guilty, though it was the best
of medicines, if he sold it, and if the other elements of the
offense are made out.  .  .  Was there in this compound,
whether bought as a medicine or not, a sufficient quantity of

spirituous liquor to produce intoxication in its ordinary use?
If there was, then it is an article prohibited by the statute,
whether it is the best of medicines or not."

JOHN GAMBLE, for the appellant, cited *Wall v. State,*
78 Ala. 417; *Carson v. State,* 69 Ala. 235; *Ryall v. State,*
78 Ala. 410; *Knowles v. State,* 80 Ala. 9.

WM. L. MARTIN, Attorney-General, for the State.

SOMERVILLE, J.—The defendant, being indicted, was
convicted of selling spirituous liquors without a license, and
contrary to law.   The article sold was labelled "Elixir Cin-
chona," or "Cinchona Bitters."   The evidence on the part
of the State tended to prove that it contained spirituous
liquor sufficient to make it intoxicating in its ordinary use as
a beverage, and that it was frequently sold and used as a
beverage in the community, especially since the enactment
of a local law prohibiting the sale of spirituous liquors in
Escambia county, and that it was sold by the defendant more
as a beverage than as a medicine.   The testimony offered by
the defendant, on the contrary, tended to prove that the de-
coction contained twenty per cent. of proof spirits, or only
enough to prevent it from fermentation, and no more; that
it was manufactured in good faith as a medicine, and that it
was a valuable tonic and stimulant, and not as an intoxicant
in its ordinary use; that it contained barks and herbs of
known medicinal qualities, and was sold in good faith as a
medicine, and not as a beverage.

The purpose of prohibitory liquor laws is to promote the
cause of temperance, and prevent drunkenness.   The mode
adopted to accomplish this end is the prevention of the sale,
the giving away, or other disposition of intoxicating liquors.
The evil to be remedied is the use of intoxicating liquors as
a beverage, rather than as an ingredient of medicines and
articles for the toilet, or for culinary purposes; and the ob-
ject of the law in this particular must not be lost sight of in
its interpretation.   It is true, and we have so held in *Carson's
case,* that if the article sold was spirituous, or other intoxi-
cating liquor, the fact that it was sold for medicine would
be no defense, unless there was an express exception in the
statute.   But we observed in that case as follows:  "We are
not to be supposed as intimating that physicians or drug-
gists would be prohibited, under such a statute as the one

in question, from the *bona fide* use of spirituous liquors in the necessary compounding of medicines manufactured, mixed or sold by them. This would not be within the evils intended to be remedied by such a prohibitory enactment, nor even within the strict letter of the statute."—*Carson v. State*, 69 Ala. 235, 241; *Woods v. State*, 36 Ark. 36; s. c., 38 Amer. Rep. 22. We again said in discussing this same subject, in *Wall v. State*, 78 Ala. 417: "There may be cases, perhaps, where the *bona fide* use of a moderate quantity of spirituous liquor, in a medicinal tonic, would not alone bring a beverage [or decoction] within the statute."

This question is exhaustively discussed in the *Intoxicating Liquor Cases*, 25 Kans. 751; 37 Amer. Rep. 384, decided in the year 1881. The Kansas statute prohibited the sale of "all liquors, and mixtures, by whatever name called, that will produce intoxication." It was held not to embrace standard medicines, and toilet articles, not ordinarily used as beverages, such as tincture of gentian, bay-rum, and essence of lemon, although containing alcohol. Whether it embraced certain cordials, or bitters, was held to be a question of fact, dependent on the evidence as to their intoxicating qualities and ordinary use. It was said that "bay-rum, cologne, paregoric, and tinctures generally, all contain alcohol, but in no fair or reasonable sense are they intoxicating liquors, or mixtures thereof." And as to the cordials and bitters, the question was said to be one of fact, which should be referred to the jury. "If the compound or preparation," said the court, "be such that the distinctive character and effect of intoxicating liquor are gone—that its use as an intoxicating beverage is practically impossible by reason of the other ingredients—it is not within the statute. The mere presence of the alcohol does not bring the article within the prohibition. The influence of the alcohol may be counteracted by the other ingredients, and the compound be strictly and fairly only a medicine. On the other hand, if the intoxicating liquor remains as a distinctive force in the compound, and such compound is reasonably liable to be used as an intoxicating beverage, it is within the statute, and this though it contain many other ingredients, and ingredients of an independent and beneficial force in counteracting disease, or strengthening the system. 'Intoxicating liquors, or mixtures thereof;' this, reasonably construed, means liquors which will intoxicate, and which are commonly used as beverages for such purposes, and also any mixture of such

liquors as, retaining their intoxicating qualities, it may be fairly presumed may be used as a beverage, and become a substitute for the ordinary intoxicating drinks."

In *King v. State*, 58 Miss. 737; 38 Amer. Rep. 344 (1881), the defendants were indicted for selling intoxicating liquor without a license, and contrary to law. The article sold was "Home Bitters," a decoction composed of thirty per cent. of alcohol, and the rest of water, barks, seeds, herbs, and other like ingredients. It was alleged by the defendant to have been sold as a medicine. It was held that, if the compound was intoxicating, and was sold as a beverage, the jury should convict; but, if it was sold in good faith, only as a medicine, they should acquit. It was said: "One authorized to sell medicines ought not to be held guilty of violating the laws relative to retailing, because the purchaser of a medicine containing alcohol misuses it, and becomes intoxicated; but, on the other hand, these laws can not be evaded by selling as a beverage intoxicating liquors containing drugs, barks, or seeds which have medicinal qualities. The uses to which the compound is ordinarily put, the purposes for which it is usually bought, and its effect upon the system, are material facts, from which may be inferred the intention of the seller. If the other ingredients are medicinal, and the alcohol is used as a necessary preservative or vehicle for them—if, from all the facts and circumstances, it appears that the sale is of the other ingredients as a medicine, and not of the liquor as a beverage—the seller is protected; but, if the drugs and roots are mere pretenses of medicines, shadows and devices under which an illegal traffic is to be conducted, they will be but shadows when interposed for protection against criminal prosecution." See, also, *Wall's Case*, 78 Ala. 417; *Ryall's Case, Ib.* 410. To the same effect, substantially, is the case of *Com. v. Ramsdell*, 130 Mass. 68 (1881).

We have quoted at length from the foregoing authorities, because they seem to be carefully considered, and furnish suitable tests for the determination of what may be considered intoxicating liquors within the meaning of our prohibition liquor laws, as accurate and just as seems to be practicable. We accordingly adopt the doctrine of these cases, as the correct rule for the government of this case on another trial.

The rulings of the Circuit Court are not in accord with this view, and for this reason the judgment must be reversed.

It was competent to prove the intoxicating qualities of the

[Andy v. The State.]

elixir, or bitters in question, by the experimental effect of its use.—*Knowles v. State*, 80 Ala. 9. Or the same fact could be proved by any witness who is shown to have had an opportunity of personal observation, or of experience, such as to enable him to form a correct opinion. He need not be a technical expert, and it is no objection that his statement of the fact is made in the form of an opinion. *Carson v. State*, 69 Ala. 236; *Merkle v. State*, 37 Ala. 139. So, it was proper to prove that this article was bought and used for a beverage, and drank as such by many persons in the community, or elsewhere. Its nature was illustrated by the uses to which it was put. The court did not err in its rulings on the evidence.

The judgment is reversed, and the cause remanded for a new trial.