# Tinker *v.* The State.

*Indictment for Selling Liquor without License.*

1. *Sale of imported liquors in original packages.*—The act of Congress approved August 8th, 1890, removing the restrictions imposed by congressional regulations of commerce upon State legislation in regard to the sale of imported liquors without a license (U. S. Statutes, 1889–90, p. 313), does not require new legislation on the subject, but gives full force and effect to existing statutes; and it applies to all imported liquors subsequently sold in the original packages, whether imported before or after its passage.

2. *Same; burden of proof as to time of importation.*—If said act of Congress could be construed as applicable only to liquors imported after its passage, the *onus* would be on the defendant, when prosecuted for a subsequent sale without license, to show that the liquor sold by him was in fact imported before the passage of the act of Congress.

[Tinker v. The State.]

FROM the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—Indictment for selling vinous or spirituous liquors, without license, and contrary to law. Trial on agreed facts, showing that the defendant sold one pint of whiskey in Jackson county, on August 21, 1890, to Joseph Barly, and received payment therefor; that the liquor so sold constituted an original package, which had been shipped from Tennessee to the defendant in Jackson county, Alabama; that defendant received and sold it in the original package, as the agent of the owner, and that neither the defendant nor the owner of the liquor had license to sell vinous or spirituous liquors in said county of Jackson, nor in the State of Alabama. This being all the evidence, the general affirmative charge was requested, both by the State, and by the defendant. It was given at the State's instance, and refused to the defendant. Exceptions to the court's action in each particular were reserved; and these exceptions involve the only question presented by this appeal.

It may be conceded that the act charged, and for which conviction was had, was an act of inter-state commerce, within the principles declared in the "Original Package Cases." *Leisy v. Hardin*, 135 U. S. 100. But that fact will not avail the defendant. On August 8, 1890, thirteen days prior to the sale proved in this case, Congress passed an act "to limit the effect of the regulations of commerce between the several States and with foreign countries in certain cases," which provides: "That all fermented, distilled, or other intoxicating liquors or liquids, transported into any State or Territory, or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in the original packages or otherwise."—U. S. Statutes, 1889-90, p. 313.

We are aware that there has been some contrariety of opinion on the part of *nisi prius* judges, as to whether the effect of this statute was to subject liquors in original packages to existing State police regulations, or merely to open the way for future legislation on the part of the State. These cases

have not been reported, and we do not know the considerations upon which the conflicting conclusions have been reached. We do not conceive it to be necessary to enter upon any extended discussion of the point; and we shall not do so. Our view is, that the existing laws of Alabama in regulation or prohibition of the liquor traffic were intended to reach, apply to, and prevent or regulate all sales of certain liquors, within the territory to which the statutes are applicable, whether the liquor was produced in the State, or had been brought into the State, and lost its character as a subject-matter of commerce, by being taken out of the original packages, or had been imported and put on the market in the original packages. The terms of our statutes are commensurate with this broad intention of the legislature, and cover every possible sale of vinous, spirituous, or malt liquors, or intoxicating bitters, wholly regardless of the character of the article in its relation to interstate commerce. These statutes have, prior to the act of August 8, 1890, been stopped short of the full operation and effect which they were intended to have, and which their terms aptly confer, by an obstacle resulting from the exclusive control of Congress over commerce among the States, and preventing their application according to their language and intent to a class of liquors over which Federal control had been exercised, by reason of its being a part of that commerce. This obstacle, the efficient and only cause for a denial of the operation of the police regulations of Alabama on imported liquors in original packages, was, before the act charged in this indictment, effectively removed by the act of Congress we have quoted *in extenso;* and immediately thereupon liquors in original packages imported from other States, or from foreign countries, became "subject to the operation of all the laws of this State, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in" this State.—*Dorman v. State*, 34 Ala. 216, 245, 248–9.

Some question has also been made, as to whether the act of Congress withdrew Federal obstruction to the operation of State laws, in respect to liquors in original packages which were in the State at the time of its passage, or only with respect to such liquors as should thereafter be imported. We think the terms of the enactment clearly enforce the former view, and limit the effect of the regulations of commerce between the States so as to admit of the operation of State regulations of the liquor traffic upon liquids and liquors in original packages which were in the State at the time of the passage of the act, as well as upon subsequent importations. The withdrawal of

[Cooper v. The State.]

Federal regulations applies to all liquors " transported "—not such only as shall be transported—" into the State, or remaining therein for use," &c. But, even were this otherwise, the consideration can be of no advantage to the appellant. The statement of facts, to which he agreed, and upon which he was convicted, fails to show whether the whiskey he sold was in the State on August 8, 1890, or not. If it should be held that no conviction could be had for a sale of liquor brought into the State prior to the passage of the act of Congress, and sold afterwards in the original packages, the *onus* was upon the defendant to show the fact of such previous importation, and nothing being shown on the point, the conclusive presumption is, that the exceptional fact does not exist.

The statutes of Alabama requiring a license for the sale of liquors, punishing the retailing of liquors without a license, and prohibiting such sales absolutely in certain localities, are all laws enacted in the exercise of the State police power, within the meaning of the act of Congress. These laws on the 21st day of August, 1890, when the offense charged was committed, were in full operation and effect against the sale by the defendant of a pint of whiskey in the original package, neither he nor his principal having a license to make the sale in Jackson county; and the fact of the sale on the day named, without a license, being admitted, the court correctly directed the jury, if they believed the evidence, to find the defendant guilty as charged.

The judgment of the Circuit Court is affirmed.