# Wadsworth *v.* Dunnam.

*Action on Promissory Note.*

1. *Intoxicating liquor.*—"Ginseng Cordial" is not what is generally known as intoxicating liquor, such as whisky, brandy, gin, and the like, nor, on the other hand, is it what is generally known as medicine, or as a toilet or culinary article, and is not therefore, as matter of law, to be declared within the provisions of the act forbidding the sale or other disposition of vinous, spirituous or malt liquors, or intoxicating bitters or beverages.—Acts 1882-3, pp. 613-16; but whether it was or not was a question of fact for the jury.

2. *Intoxication.*—The word, intoxication, as used in said Act, means an abnormal, mental or physical condition, due to the influence of alcoholic liquors, a visible excitation of the passions, an impairment of the judgment, or a derangement or impairment of physical functions or energies.

3. *Criterion of intoxicating liquors.*—A charge that declares that no liquor is intoxicating unless its moderate and reasonable use will produce inebriety is to declare that no liquor whatever is intoxicating, and prescribes an erroneous test. The true criterion is, that if the compound be lacking in the distinctive character and effect of intoxicating liquor, and its use as an intoxicating beverage is practicably impossible, it is not within the statute; but if the intoxicating liquor remain as a distinctive force, and it is reasonably liable to be used as an intoxicating beverage, it is within the statute. It is not a question of *quantity*, but whether it *may reasonably be drunk* to intoxication.

[Wadsworth v. Dunnam.]

APPEAL from Shelby Circuit Court.

Tried before the Hon. LeRoy F. Box.

This was a suit brought by F. P. & C. L. Dunnam to recover of the defendant, A. J. Wadsworth, the sum of eighty-two dollars, due on several promissory notes made by the defendant. The defense was that the notes were given in settlement of an account made by the defendant with the plaintiff, which contained items of intoxicating bitters, sold in violation of an Act approved February 23, 1883, forbidding the sale of intoxicating bitters or beverages in Beat 4 of Shelby county. Issue was taken on the plea, and much evidence was adduced in regard to the nature and effects of said beverage, which was named "Ginseng Cordial," some of which evidence tended to show that it readily produced intoxication; and, on the other hand, there was evidence to show that it was a medicine and contained only a sufficiency of alcoholic spirits to prevent fermentation, and that used reasonably, or in moderation, it did not produce intoxication.

Among the charges given at the request of the plaintiffs, was the following: (3.) "The bitters must have been reasonably susceptible of being used as a beverage, or as a substitute for the ordinary intoxicating drinks, to come under the ban of the statute; if it was necessary to use it unreasonably and immoderately to make it intoxicating, and there was no more alcohol used in the compound than was necessary to extract the aromatic or medicinal properties, and prevent fermentation of the other ingredients, then its sale is not prohibited by the statute, and if you find these facts to exist from the evidence, then you must find for the plaintiffs." To the giving of this charge and others, stated and commented upon in the opinion of this court, the defendant excepted, and assigns the rulings of the trial court thereon as error in this court.

W. S. CARY and W. R. OLIVER, for appellant, cited, 3 Brick. Digest, § 1003, p. 248; *Allred v. State,* 89 Ala. 114; *Carl v. State,* 89 Ala. 93; Bishop on Contracts, § 74; *Bozeman v. Allen,* 48 Ala. —; *Wynne v. Whisenhant,* 37 Ala. 46.

PETERS, WILSON & LYMAN, for appellees, cited, *Carl v. State,* 87 Ala. 17; *Intoxicating Liquor Cases,* (Kan.) 37 Am. Rep. 284.

McCLELLAN, J.—This action is on certain notes given by Wadsworth to F. P. & C. L. Dunnam in settlement of an

account. Some of the items of this account were charges for bottles of "Ginseng Cordial" sold by plaintiffs to defendant. A statute of force at the place of these sales made it "unlawful for any person or persons to sell, give away, or otherwise dispose of, any spirituous, vinous or malt liquors, or intoxicating bitters or beverages"; and imposed a penalty for its violation.—Acts 1882-3, pp. 613-616. The defense was that this "Ginseng Cordial" was an intoxicating bitters or beverage within this act ; and the plea to this effect presented the sole issue on the trial below.

Ginseng Cordial is not what is generally known as intoxicating liquor, such as whisky, brandy, gin and the like, nor, on the other hand, is it what is generally and properly known as medicine, or as a toilet or culinary article recognized as such in standard authority, the United States Dispensatory for instance, such as tincture of gentian, paregoric, bay-rum, cologne, essence of lemon, and the like, which, though containing alcohol and capable of producing intoxication, are not intoxicating liquors, bitters or beverages within prohibitory statutes. And it is not therefore to be declared as matter of law, either that this cordial is, or that it is not, within the provisions of the act referred to. Whether it is so or not is a question of fact for the jury under the instructions of the court.—Black on Intox. Liq. § 8 ; *Intoxicating Liquor Cases*, 25 Kan. 7 ̣1 ; s. c. 37 Am. Rep. 284; *Carl v. State*, 87 Ala. 17.

On this issue of fact there was evidence—indeed, it was not controverted—that the cordial in question contained alcohol; and the evidence for the defendant was that the proportion of alcohol was so great as that the mixture was about as intoxicating as whisky. There was no pretense on the part of plaintiffs that the decocti·on was useful, or intended to be used, as an article for the toilet, or for culinary or mechanical purposes ; their sole theory was, that it was a medicine containing only sufficient alcohol to prevent fermentation ; but the only evidence adduced in support of this theory was, that "the mixture consisted of thirty parts of water, eight parts of alcohol, two parts of simple syrup and ginseng, and other roots and herbs possessing medicinal properties." On the other hand, an expert testified for defendant that he had analyzed the cordial, and that the ginseng and other herbs it contained possessed no medicinal properties whatever. And the evidence further went to show that the cordial was not sold to or used by sick persons, but was sold to persons having no occasion for a medicine, and drank by them to intoxication as a beverage. In

[Wadsworth v. Dunnam.]

view of this contention of the plaintiffs, that the mixture was a medicine and not a beverage, and this evidence on the part of the defendant, that it was not a medicine at all and possessed no medicinal qualities, but was an intoxicating beverage, it was manifest error for the trial court to assume, as it did in the third charge given at plaintiff's request, that the mixture did possess medicinal properties.—*Cary v. State,* 76 Ala. 78; *Sandlin v. Anderson, Green & Co.,* 76 Ala. 403; *Joyner v. State,* 78 Ala. 448; *Carter v. Chambers,* 79 Ala. 223; *Jonas v. Field,* 83 Ala. 445; *Richmond & Danville R. R. Co. v. Greenwood,* (Miss.)

In giving many of the charges requested by the plaintiffs and in refusing some of those asked by the defendant, the court below proceeded on the idea that, aside from other considerations, "Ginseng Cordial" could not be said to be an intoxicating bitters or beverage, if it produced intoxication only when used unreasonably, inordinately, immoderately or excessively, and would not have this effect if used reasonably and moderately, or in ordinary and not excessive potations. Thus charge 2, given for plaintiffs, in its last sentence declares: "If the bitters sold in this case would not in ordinary and reasonable use intoxicate, the jury must find for the plaintiffs." Charge 4 for plaintiffs is in the following language: "It is not the question whether it was possible to use the bitters as an intoxicating beverage, but whether it is reasonably susceptible of such use, and it must be such by moderate and practical use, not by immoderate or excessive use. If the jury believe from the evidence that the bitters must have been drunk immoderately or excessively in order to make it practically or reasonably susceptible of use as an intoxicating beverage, then they must find for the plaintiffs. Charge 7 of plaintiffs' series is as follows: "If the evidence shows that the bitters sold by plaintiffs were only intoxicating when used excessively or immoderately, then the jury must find for the plaintiffs." And so with several other instructions given at plaintiff's request, while one or two charges asked by defendant and refused were intended to instruct the jury that the decoction might be held to be an intoxicating beverage, notwithstanding moderate use of it would not produce intoxication. In giving these charges for the plaintiffs, the court below, in our opinion, set up a false criterion for the determination of the question involved. The words employed, in their construction are, of course, to be taken in their ordinary significance. The word "intoxication," as therein used, means an abnormal mental or physical condi-

[Wadsworth v. Dunnam.]

tion due to the influence of alcoholic liquors—a visible excitation of the passions, an impairment of the judgment, or a derangement or impairment of physical functions or energies.—Black on Intoxicating Liquors, § 423; *Standard Life & Accident Ins. Co. v. Jones,* 94 Ala. 434. This implies a condition which would not result from the *reasonable, ordinary* and *moderate* use of the most intoxicating liquors. Intoxication, by means even of those liquors which the law itself recognizes as *per se* intoxicating, in general acceptance, is produced by their unreasonable, inordinate, immoderate or excessive use; and to say that no liquor is intoxicating unless its moderate and reasonable use will produce inebriety, is to declare that no liquor whatever is intoxicating. This can not be, and is not the test. The true criterion is that declared by Justice Brewer in the *Kansas Liquor Cases* referred to above, and adopted by this court in *Carl v. State, supra.* It is thus stated: "If the compound or preparation be such that the distinctive character and effect of intoxicating liquor are gone, that its use as an intoxicating beverage is practically impossible by reason of the other ingredients, it is not within the statute. . . . . . On the other hand, if the intoxicating liquor remain as a distinctive force in the compound, and such compound is reasonably liable to be used as an intoxicating beverage, it is within the statute, and this though it contain many other ingredients of an independent and beneficial force in counteracting disease or strengthening the system. Intoxicating liquors or mixtures thereof: this, reasonably construed, means liquors which will intoxicate and which are commonly used as beverages for such purposes, and also any mixture of such liquors as, retaining their intoxicating qualities, it may fairly be presumed may be used as a beverage and become a substitute for the ordinary intoxicating drinks." Given that the particular compound will intoxicate, the question is not what *quantity* of it is necessary to produce intoxication, but whether the necessary quantity, however great or small, *may reasonably be drunk.* It is of no consequence that it may require from two to eight bottles of this "Ginseng Cordial" to produce intoxication if that quantity may be taken without other deleterious consequences than such as are incident to intoxication. If the quantity requisite to a state of intoxication may be safely used, it is a compound "reasonably liable to be used as an intoxicating beverage" and therefore within the statute. The instructions to which we have adverted appear especially misleading and erroneous when referred to the undisputed

[Garrett v. Heflin.]

evidence that the compound was agreeable to the taste, that it was used solely as a beverage, and to a great extent as such, and that it could be relied on to produce intoxication without any baleful consequences other than are incident to intoxication by means of other alcoholic liquors. Their natural effect in this connection taken with evidence on the part of plaintiffs that it required from two to eight fourteen ounce bottles to produce intoxication, was to impress the jury that the cordial was not an intoxicating beverage merely because it took a good deal of it to accomplish inebriety when upon no principle or reason can the quantity alone have any bearing on the matter so long as the compound is agreeable to the taste and the necessary quantity may be safely taken. These charges clearly should not have been given.

What we have said will suffice for the guidance of the Circuit Court on another trial.

Reversed and remanded.