[Marks v. The State.]

# Marks *v*. The State.

### *Selling Spirituous Liquor Without License.*

#### (Decided Feb. 18, 1909.  48 South. 864.)

1. *Evidence; Judicial Knowledge; Intoxicating Liquors.*—Courts cannot take judicial knowledge that mead or metheglin is an alcoholic, spirituous, vinous, malt or intoxicating liquor or beverage, or that it will produce intoxication if drunk to excess.

2. *Intoxication Liquors; Statute; Construction.*—Section 1 of General Acts, 1907, 1st Special Session, by the use of the terms "or other liquors or beverages by whatsoever name called, which if drunk to excess, will produce intoxication" does not mean to qualify and relate to each and all of the liquors or beverages which precede such clause, and hence, the statute does not prohibit the sale of such other beverages or liquors unless they contain sufficient alcohol to produce intoxication if drunk to excess.

3. *Same; Contents; Jury Question.*—It is a question of fact for the jury to determine whether a beverage contains 1.46% alcohol by weight, and 1.88% by volume, and 1.20% maltose, making about two and a half teaspoonfuls of alcohol to the pint, is an alcoholic, spirituous, vinous, malt or intoxicating liquors, or whether if drunk to excess, will produce intoxication.

4. *Same; Statutes; Prohibition.*—Where a statute named designates or enumerates classes or species of beverages or liquors which are prohibited to be sold or dealt with, and it clearly appears that a given beverage is within the scope of the forbidden enumeration, and is intoxicating, its properties are immaterial, and not a subject of inquiry in a prosecution for the wrongful sale thereof.

5. *Same; Statutes; Legislative Power.*—It is within the power of the legislature to absolutely prohibit the sale of intoxicating beverages, to say what are intoxicating, what are prohibited and what are not, and to designate them by general or special terms.

6. *Same; Definition.*—Intoxicating liquors are liquors intended for use as a beverage, and capable of being used as such, which contain alcohol in such per cent that they will produce intoxication when imbibed in such quantities as may be practically drank; and this, regardless of how the alcoholic constituents are obtained; but the term, intoxicating liquors, is not synonymous with spirituous, liquors, since all spirituous liquors are intoxicating liquors, yet all intoxicating liquors are not spirituous liquors.

7. *Same; Wrongful Sale; Complaint; Time.*—Where the indictment or affidavit attempts to charge an offense against a statute which went into operation within twelve months from the time of the filing of the complaint, time becomes a material ingredient of the offense, and the complaint is fatally defective, if it fails to allege that it was committed after the act took effect.

[Marks v. The State.]

8. *Words and Phrases; Intoxicating Liquors; Alcoholic or Spirituous Liquors.*—The phrase, alcoholic or spirituous liquors, necessarily means intoxicating liquors.

9. *Same; Spirituous and Intoxicating Liquors.*—Pure Alcohol is within the term, spirituous and intoxicating liquors.

10. *Same; Liquors or Liquor.*—The term, liquors or liquor, includes all kinds of intoxicating decoctions, whether spirituous, vinous, malt or alcoholic.

11. *Same; Whisky.*—Whisky is alcohol diluted with water and mixed with other elements or ingredients.

12. *Same; Alcoholic.*—Alcoholic means containing or pertaining to alcohol, and alcohol has but one source, viz., fermentation, and is extracted from its by-products by distillation, and while it is the intoxicating principle of all drink within the meaning of ordinary prohibition, statute, it is rarely used in its pure state as a beverage.

13. *Same; Intoxicating Bitters.*—Intoxicating bitters include those bitters, beverages, or decoctions in which the distinctive character and effect of intoxicating liquors are present, so that it may be used as a beverage, notwithstanding its other ingredient; and though the other ingredients are medical and predominate, and alcohol is used to preserve these medical properties and serve as a vehicle therefor, if it can be used as a beverage, then it may or may not be included in the prohibition statute unless the statute specially so declares by name, depending on the evidence in the particular case, since the court cannot declare, as a matter of law, that particular beverages or bitters are or are not intoxicating.

14. *Same; Malt Liquors.*—Porter, ale, beer, etc., are embraced in the term, malt liquors, and are the product of a process by which grain is steeped in water to the point of germination, the starch being thus converted into saccarine, which is kiln dried, then mixed with hops, and by further process of brewing made into a beverage.

15. *Same; Vinous Liquor.*—Vinous liquor means liquor made from the juice of grapes, and may also include wines made from fruit or berries, by process of fermentation by the addition of sugar and alcohol.

16. *Same; Spirituous Liquor.*—Spirituous liquor is liquor composed in whole or in part of alcohol, extracted by distillation, such as whisky, brandy or rum, and these liquors are regarded as spirituous or intoxicating without the necessity of proof.

APPEAL from Jefferson Criminal Court.

Heard before Hon. A. C. HOWZE.

Julius Marks was convicted of selling mead, a spirituous liquor, and he appeals. Reversed and remanded.

JOHN T. GLOVER, and A. LEO OBERDORFER, for appellant. The demurrers to the indictment should have been sustained.—*Noles v. The State*, 26 Ala. 31; *Dentler v.*

[Marks v. The State.]

*The State,* 122 Ala. 70; *Bibb v. The State,* 83 Ala. 84; *Dorman v. The State,* 34 Ala. 216 and cases there cited; 1 Ency. P. & P. 68; 22 Cyc. 361. The third count does not charge that mead is a beverage. Counsel discuss assignments of error relative to evidence, but without citations of authority. The court improperly gave charge 1.—*Thompson v. The State,* 122 Ala. 12; *Maddox v. The State,* 122 Ala. 110; *Sims. v. The State,* 99 Ala. 161. The court does not judicially know that mead is an intoxicant or that it is an alcoholic, spirituous, vinous or malt liquor, and in the absence of evidence showing that it is such, no conviction can be held.—*Daniel v. The State,* 43 South. 22; *Allred v. The State,* 8 South. 56; *Brantley v. The State,* 8 South. 816; *Carl v. The State,* 87 Ala. 17. See also in this connection.—*Kansas Liquor Cases,* 37 Am. Rep. 287; *Wadsworth v. Dunham,* 13 South. 597; *U. S. v. Goldberg,* 168 U. S. 103; 26 A. & E. Ency. of Law, 613; *Thompkins County v. Taylor,* 21 N. Y. 173; *Foster v. The State,* 36 Ark. 258; 3 Mich. 330; 96 Tenn. 544; 51 S. W. 381; *Wall v. The State,* 78 Ala. 411; 87 Ga. 687; 91 Ga. 227.

ALEXANDER M. GARBER, Attorney General, and THOMAS W. MARTIN, Assistant Attorney General, for the State. The demurrers to the indictment were properly overruled.—*McDowdell v. The State,* 61 Ala. 172; *McIntyre v. The State,* 55 Ala. 167; *Lyon v. The State,* 61 Ala. 224; *Harris v. The State,* 60 Ala. 50; *Adams v. The State,* 60 Ala. 52; *Mollett v. The State,* 33 Ala. 409. The prosecution was begun by affidavit, and the allegations come up to the rule in such cases.—*Brazzelton v. The State,* 66 Ala. 96; *Bell v. The State,* 75 Ala. 25; *Randle v. The State,* 46 South. 759. It is unnecessary to aver the name of the person whom the defendant aided

[Marks v. The State.]

or abetted.—*Jones v. The State,* 136 Ala. 118. The offenses are of the same general nature.—Section 7151, Code 1907; *McClellan v. The State,* 118 Ala. 122; *Thomas v. The State,* 111 Ala. 51. The opinion concerning the intoxicating character of mead was properly admitted.—*Knowles Case,* 80 Ala. 9; *Brantley v. The State,* 90 Ala. 47. The court judicially knows the definition of the terms, spirituous, vinous or malt liquors.—*Miller v. The State,* 107 Ala. 40; *Allred v. The State,* 80 Ala. 112; *Feibleman v. The State,* 130 Ala. 122; *Daniel v. The State,* 149 Ala. 44; *Dinkins v. The State,* 149 Ala. 49; 23 Cyc. 22. On these authorities and authorities supra, the court committed no error in the admissions and exclusion of evidence.

MAYFIELD, J.—This appeal involves questions which require a construction of the general prohibition laws of this state, not necessarily as to the constitutionality of such laws, but as to the meaning, interpretation, and effect of certain provisions contained therein. The prosecution was commenced by, and was based solely upon, an affidavit containing three counts. The first attempted to charge that defendant aided, abetted, or procured an unlawful sale, purchase, or other unlawful disposition of spirituous, vinous, or malt liquors, etc.; second, that defendant acted as agent or assisting friend of the seller or purchaser in procuring an unlawful sale or purchase of such liquors, etc.; third, that defendant sold spirituous, vinous or malt liquors, or mead, which, if drunk to excess, will produce intoxication. The defendant demurred to the affidavit or complaint, and assigned many grounds therefor, too numerous to mention.

The court overruled the demurrer, and trial was upon the general issue. The court, at the request of the state, gave the general affirmative charge for the state as to

the third count, refused a like charge to the defendant as to each count separately, and refused a great number of other charges requested by the defendant. The jury after being out for an hour or more, returned to the court for further instruction. The foreman inquired of the court if the jury had to find that mead would intoxicate. The court replied that the giving of the general affirmative charge relieved them of that; that this charge meant that if the jury believed the evidence beyond a reasonable doubt they must convict the defendant which action of the court was excepted to by defendant.

Many questions are reserved as to rulings of the trial court touching the evidence. The trial resulted in a conviction under the third count only, and a fine of $50 was imposed.

The first two counts each attempted to charge an offense under section 7363 of the Code of 1907, which section is codified from the act of March 12, 1907 (Acts 1907, p. 366). The third count evidently attempted to charge an offense under the general statutory prohibition law known as the "Carmichael Bill," passed at the extraordinary session, and approved November 23, 1907 (Gen. Acts sp. Sess. 1907, pp. 71-76.)

The verdict and judgment eliminated all questions as to the first two counts, and render unnecessary a decision or construction of section 7363 of the Code of 1907, but require a construction of section 1 of the act of November 23, 1907 (above referred to), reading as follows: "Section 1. Be it enacted by the Legislature of Alabama, that it shall be unlawful for any person, firm, corporation, or association, within this state to manufacture, sell, barter, exchange, give away to induce trade, furnish at public places or otherwise dispose of any alcoholic, spirituous, vinous or malt liquors, intoxicating bitters or beverages or other liquors or beverages by whatso-

ever name called, which if drunk to excess will produce intoxication, except as hereinafter provided."This section has never been codified, having been passed after the adoption of the Code, and hence is not controlled by any Code provisions or prior statutes, through some of the Code provisions are applicable to prosecutions under it, and it may be construed in pari materia with other provisions of our laws.

It was admitted that defendant sold one bottle of a beverage known as "mead" (a beverage sometimes called "metheglin," made of water and honey), since the 1st day of January, 1908, when the prohibition law went into effect as to Jefferson county. This was the only disposition of any liquor or beverage by the defendant which was attempted to be proven. The state introduced in proof a chemical analysis of another bottle of the beverage known as "mead," and some evidence tending to show it was a malt and intoxicating liquor; while the defendant's evidence tended to show that it was not an intoxicating or malt liquor. It was conceded, however, that it contained maltose and alcohol; but it was contended by the defendant that it did not contain either in such quantities, or in such form, or under such conditions as to come within the meaning of the statute.

The trial court instructed the jury that if they believed the evidence beyond a reasonable doubt they must find the defendant guilty under the third count. This charge can be supported or justified only upon the theory that mead is either an "alcoholic," "spirituous,'" "vinous," "malt," or "intoxicating" liquor or beverage, within the meaning of the statute. If the statute inhibits the sale of all liquor or beverage which contains any alcohol or malt, then the charge of the court was correct; otherwise, it was erroneous. Whether or not this beverage was an intoxicant was evidently considered immate-

rial by the trial court. Under no other theory can this action of the trial court be justified. In this we think the trial court was in error.

This court does not judicially know that mead or metheglin is an alcoholic, spirituous, vinous, malt, or intoxicating liquor or beverage, or that, if it is drunk to excess, it will produce intoxication. Nor do we think that the fact that it contains 1.46 per cent. of alcohol by weight, and 1.88 per cent. by volume, and 1.20 per cent maltose, making about $2\frac{1}{2}$ teaspoonfuls of alcohol to the pint, makes it as a matter of law within the inhibition of the statute. We are therefore clearly of the opinion that it was a question for the jury, under the evidence, to say whether or not mead was alcoholic, spirituous, vinous, malt, or intoxicating, or whether it was a liquor or beverage which, if drunk to excess, will produce intoxication. In other words, was the liquor or beverage sold within the inhibition of the statute? That was clearly a question of fact under the evidence, and not one of law.

If the statute had prohibited the sale of mead, or declared that it was an alcoholic, spirituous, vinous, malt, or intoxicating liquor or beverage, or if the court judicially knew that it was within any one of these classes, then under the evidence in this case the court could probably have given the affirmative charge; but it clearly appears that, if mead is within the inhibition of the statute, it is clearly under the last clause of the first section of the statute, which inhibits the sale, etc., of "other liquors or beverages by whatsoever name called, which if drunk to excess will produce intoxication," and the evidence was in dispute as to whether or not it would produce intoxication, if drunk to excess. One witness, shown to be a highly educated physician, testified in substance that 'a man's stomach would not contain

enough of the beverage to produce intoxication; that enough might be taken in the stomach to produce a thrill, but nothing more. Another witness testified that he had drunk a great deal of mead—as much as four bottles in an hour—and that it would not intoxicate. True, there 'was some evidence to show it would intoxicate if drunk to excess, and, while we can no more pass upon the weight or sufficiency of the evidence than could the trial court, yet we do say there was ample evidence to require the submission of this fact to the jury.

While we agree in part with counsel for appellant, we cannot concur with them in the contention (so forcefully and ably insisted upon) to the effect that the clause "which if drunk to excess will produce intoxication," qualifies and relates to each and all of the liquors or beverages which precede it—that is, to alcoholic, spirituous, vinous, or malt drinks. We are inclined to the opinion that this phrase qualifies or refers only to the clause, "or other liquors or beverages by whatsoever name called," which immediately precedes it, and which two phrases, taken together, constitute one of the six classes of liquor and beverage the sale of which is prohibited. We are led to this conclusion, not alone by the composition and grammatical construction of this section of the act, but also by a reference to the history of such legislation in this and other states, and the judicial construction put upon the terms "spirituous," "vinous," "malt,' and "intoxicating" liquors and beverages by this and other courts. These terms each had a well defined and accepted judicial construction by the courts, when used in such statutes; and it does not appear that there was any intention to change that well accepted judicial construction. .They were severally treated as being well known and defined; but the phrase, "or other liquors or beverages by whatsoever name call-

ed," is clearly shown not to refer to every well known or defined class, but is intended to include any and all other classes or kinds, not embraced in the foregoing five classes named, "which if drunk to excess will produce intoxication."

It is said by counsel that the punctuation of the section shows that this phrase refers to all the preceding classes. Punctuation may be looked to, for the purpose of aiding in ascertaining the meaning. It is intended to make the meaning apparent and more readily ascertainable than it would otherwise be; but it can never control or destroy a meaning which is otherwise apparent and certain. When a prohibition statute names, designates, or enumerates the kinds, classes, or species of beverages or liquors against which its provisions are directed, then there is no room for further inquiry into the scope of such statute. When it clearly appears that a given article, liquor, or beverage comes within the scope of the forbidding enumeration, and is intoxicating, its properties become immaterial to courts and juries, because fixed by the lawmaking power of the state.

The courts have uniformily upheld the power of the Legislature to declare certain drinks and beverages intoxicating, when in truth and in fact they may not be so, though it is not conceded that this power is without limit. The Legislature might go to such an extent that the courts would hold it to be an unreasonable exercise of the police power—far-reaching and comprehensive as it is. The courts would probably not uphold a statute which prohibited the use or sale of a necessary commodity, such as sugar or molasses, corn or barley, under the guise of a prohibition law, which denominated them intoxicants, because they were capable of being converted into alcohol or spirituous liquors. But as to this question we do not decide, nor do we hereby mean to inti-

mate an opinion, but only refer to it to demonstrate the correctness of the construction which we place upon this section of the statute.

The Legislature have the undoubted right to prohibit absolutely the sale of intoxicating beverages, and to say what are intoxicating, what are prohibited, and what are not—to designate them by general or special terms, and to so frame and word the law as to prevent evasion of its provisions (which is known to be often attempted) ; and courts will not put such construction on the law as would render it void if dependent upon only one of these legislative powers, when it would be perfectly valid if referred to the other or both legislative powers or functions.—Black on Intoxicating Liquors, § 43; *Feibelman v. State,* 130 Ala. 122, 30 South. 384; *Wadsworth v. Dunnam,* 98 Ala. 610, 13 South. 597. When, however, the statute uses merely general terms, such as "alcoholic," "spirituous," "vinous," "malt," and "intoxicating" liquors or beverages, then it is a question for the courts or juries to determine, according to the facts in each particular case, whether a given liquor, beverage, or fluid is within the inhibition of the statute. Sometimes it is then a question of law for the court, and sometimes a question of fact for the jury.

Most of the terms used in this statute have been frequently construed by this court, and there is no conflict in the decisions on this subject as to those which have been construed. It is therefore only necessary to enumerate them, and cite the cases.

"Spirituous liquor" is that which is in whole or in part composed of alcohol extracted by distillation. Whisky, brandy, and rum are examples. That these are spirituous or intoxicating is known to courts and juries, and proof thereof is not necessary.—*Tinker v. State,* 90 Ala. 638, 8 South. 814; *Allred's Case,* 89 Ala. 113, 8 South. 56.

"Vinous liquor," ex vi termini, means liquor made from the juice of the grape; but it may include wines made from fruits or berries by a like process of fermentation, when sugar and alcohol are added.—*Allred's Case,* 89 Ala. 112, 8 South. 56; *Adler's Case,* 5 Ala. 24; *Hinton v. State,* 132 Ala. 29, 31 South. 563.

"Malt liquors" are the product of a process by which grain is steeped in water to the point of germination, the starch of the grain being thus converted into saccharine matter, which is kiln dried, then mixed with hops, and, by a further process of brewing, made into a beverage. The term embraces porter, ale, beer, and the like.— *Allred v. State,* 89 Ala. 112, 8 South. 56; 1 Mayfield's Dig. 463; *Tinker's Case,* 90 Ala. 647, 8 South. 814.

"Intoxicating liquors" are any liquors intended for use as a beverage, or capable of being so used, which contain alcohol (no matter how obtained) in such per cent. that they will produce intoxication when imbibed in such quantities as may practically be drunk. The term is not, however, synonmous with "spirituous liquors." All spirituous liquors are intoxicating, but all intoxicating liquors are not spirituous.—Black on Intox. § 2; *Allred's Case,* 89 Ala. 112, 8 South. 56.

"Intoxicating bitters." This term has been held to include those bitters, beverages, or decoctions in which the distinctive character and effect of intoxicating liquors are present, so that it may be used as a beverage, notwithstanding the other ingredients it may contain. If, however, it can be so used as a beverage, though the other ingredients are medicinal and predominate, and alcohol is used to preserve these medicinal ingredients, and serve as a vehicle for them, then it may or may not be included, depending upon the evidence in each particular case. It is not within the power or province of any court to declare, as a matter of law, that any parti-

cular bitters or beverage is or is not intoxicating, unless
the statute or other law so declares, or it be one the effect
of which every one is presumed to know—if such there
be.—*Carl's Case,* 87 Ala. 17, 6 South. 118, 4 L. R. A. 380;
Id., 89 Ala. 97, 8 South. 156.    See, also, 23 Cyc. 58, 266;
Black on Intox. Liquors, § 9.

The foregoing terms used to designate the intoxicants
inhibited by this statute are all well defined in this state;
but the term "alcohol liquors" is comparatively a new
term.   If not new, it is not of such common use, and has
not been judicially construed so often, as those indicated
above.

"Alcoholic," ex vi termini, means "containing or per-
taining to alcohol."   "Alcohol" has been frequently de-
fined by courts, in construing prohibition and kindred
statutes relating to intoxicating liquors.   It is defined
as a volatile organic body, a limpid colorless liquid, hot
and pungent to the taste, having a slight, but not offen-
sive, scent.   It has but one source, fermentation, and is
extracted from its by-products by distillation; its puri-
ty and strength depending upon the degree of perfection
or completeness of distillation.   While it is the intoxicat-
ing principle, the basis of all intoxicating drinks—cer-
tainly so within the meaning of ordinary prohibition
statutes—yet pure alcohol is rarely used as a beverage.

Whisky is alcohol diluted with water and mixed with
other elements or ingredients.—*Intoxicating Liquor
Cases,* 25 Kan. 751, 37 Am. Rep. 284; *Com. v. Morgan,*
149 Mass. 314, 21 N. E. 369; *State v. Giersch,* 98 N. C.
720, 4 S. E. 193.

The term "liquor" or "liquors" commonly includes all
kinds of intoxicating decoctions, liquids, or beverages,
whether spirituous, vinous, malt, or alcoholic.—*People
v. Crilley,* 20 Barb. (N. Y.) 248; *State v. Brittain,* 89
N. C. 576.

Whether pure alcohol comes within the phrases "spirituous" or "intoxicating" liquors is a question not well settled—some courts holding that it depends upon the language of the particular statute and the facts of each particular case, whether it was sold or purchased purely for medicinal or mechanical purposes, or to be used as an intoxicating beverage; but the weight of the authorities seems to be to the effect that, unless otherwise made by the language or provisions of the statute, it will be included in the terms "spirituous" and intoxicating" · liquors.—*Snider v. State,* 81 Ga. 753, 7 S. E. 631, 12 Am. St. Rep. 350; *Rabe v. State,* 39 Ark. 204; *State v. Martin,* 34 Ark. 340; *Bennett v. State,* 30 Ill. 389; Black on Intox. Liq. § 11.

The Supreme Court of Mississippi has held that wine is within the phrase "alcoholic or vinous liquors."—*Reyfelt v. State,* 73 Miss 415, 18 South. 925. The Court of Appeals of Georgia has recently construed the Georgia prohibition law, of which our statute is in part a copy, and, while we have seen nothing except what purports to be a manuscript copy of the opinion, that court seems to have construed this term "alcoholic liquors" in accordance with the writer's view of the meaning of that phrase as it appears in our statute. The decoction sold or kept in that case was called "Green or Pale Beer." Samples of it were analyzed, and one found to contain 4.2 per cent., and another 3.8 per cent., of alcohol. The trial · court in that case held, as we presume it did in the case at bar, that the Georgia statute, which as to this question is nearly identical with our own, includes any liquor which has an appreciable quantity of alcohol therein. The Court of Appeals of Georgia reversed the case upon this question, and held that the statute included only those liquors or beverages which contain a sufficient

quantity of alcohol to produce intoxication when drunk to excess. That the phrase "alcoholic or spirituous liquors" necessarily means intoxicating liquors is sustained, in the case last referred to, by citation of two Georgia cases.—*Bell v. State,* 91 Ga. 227, 18 S. E. 288, and *Mc Duffie v. State,* 87 Ga. 687, 13 S. E. 596.

After a careful study of the general prohibition law of this state, the one in question in this case, and comparing it with numerous others which have been construed by this and other courts, giving due weight to the fact that it was enacted with this known construction placed upon several or nearly all of the six classes or species of drinks or beverages named therein, we do not think that the statute embraces every liquor or beverage which contains a trace of alcohol or maltose, or even that contains one or both in appreciable quantities, if capable of being used as an intoxicating beverage. Such interpretation would be unreasonable, if not absurd. Where a statute has been construed, and is subsequently re-enacted, the previous construction becomes a part of the statute itself.—*Southern Railway Co. v. Moore,* 128 Ala. 450, 29 South. 659.

The statute under consideration is but the extension of kindred prohibition statutes to the entire state which were theretofore local. True, it contains provisions not heretofore embodied in local statutes, which new provisions must yet be construed. The objects and purposes of those statutes had been defined by the courts; and, being incorporated and re-enacted in the general law, they bring with them such judicial constructions. The main object and purpose of all is the same. Some may be restricted, and some more extensive and exclusive than others; but the main object and purpose of all, as said by Justice Somerville, in *Carl's Case,* 87 Ala. 17, 6 South. 118, 4 L. R. A. 308, is "to promote temper-

ance and prevent drunkenness. The mode adopted to accomplish this end is the prevention of the sale, the giving away, or other disposition of intoxicating liquors. The evil to be remedied is the use of intoxicating liquors as a beverage, rather than as an ingredient of medicines and articles of toilet, or for culinary purposes, and the object of the law in this particular must not be lost sight of in its interpretation."

However, if the article sold or disposed of is clearly within the inhibition of the statute, the fact that it was sold for medicine, etc., or that the dispenser did not know it contained ingredients which brought it within the statute, would be no defense, unless it was so expressly excepted or provided by the statute. This court in *Carson's Case*, 69 Ala. 241, which is quoted in *Carl's Case*, 87 Ala. 20, 21, 6 South. 118, 4 L. R. A. 380, says: "We are not to be supposed as intimating that physicians or druggists would be prohibited, under a statute such as the one in question, from the bona fide use of spirituous liquors in the necessary compounding of medicines manufactured, mixed, or sold by them. This would not be within the evils intended to be remedied by such prohibitory enactment, nor within the strict letter of the statute." And in *Wall's Case*, which is also quoted in *Carl's Case*, it was said: "There may be cases, perhaps, where the bona fide use of a moderate quantity of spirituous liquors in a medical tonic would not alone bring a beverage (or decoction) within the statute."— 78 Ala. 417.

The famous "Kansas prohibition law" (Laws 1881, p. 239, c. 128, § 10) prohibited "all liquors and mixtures by whatsoever name called that will produce intoxication." This law was construed by Justice Brewer, and has probably become the leading decision of the United States in construing such laws, and has been time and

time again quoted by this court and others in construing prohibition laws, and by the text-book writers on the subject, as announcing the fundamental principles which should control in construing these laws. Nearly as much might be said of *Carl's Case.* Both of these cases announce and affirm the doctrine that "the mere presence of alcohol does not bring an article within the prohibition." The influence of the alcohol may be counteracted by other ingredients, and the compound be strictly and fairly only a medicine, or a toilet or culinary article, unfit for use as an intoxicating beverage, against which the statute or law is leveled; yet, if the intoxicant prohibited remains in the compound as a distinctive force, and the compound is reasonably liable to be used as a beverage, it is then within the statute, though it may still be very beneficial as a medicine, or toilet, culinary, or mechanical article. That is to say, it was not the intention of the lawmakers to render a person guilty of violating a prohibition law who disposes of a medicine, or toilet or culinary article, because the purchaser misuses it and becomes intoxicated; but, on the other hand, they have so framed the laws, and they are so intended, that they cannot be evaded by selling articles or compounds as medicines, or toilet or culinary, or soft drinks or beverages, as nonintoxicating, which are as a matter of fact and truth intoxicating beverages. Selling wine or beer, called or labeled "vinegar," or "lemon syrup," would be as much within the statute as selling them by their real names. Yet selling Blue Lick or Stafford's Springs water would not be an offense, though labelled "Cream of Kentucky," "Three Feathers," "Whiskey," etc. Nor is the sale of camphor, paregoric, or bay rum within the statute, though containing alcohol in large quantities; yet any compound which contains alcohol—the almost uni-

versal and sole intoxicating ingredient of all bever-
ages—and is capable of being, or as a matter of fact is,
used as an intoxicating beverage, may be within the
statute, though not compounded as such beverage, and
though used for other legitimate purposes.

As said before in this opinion, when the law names,
enumerates, or defines certain articles, compounds, decoc-
tions, beverages, or liquors as intoxicants, and prohibits
their use, this may be conclusive upon the courts and
juries; but when the law uses general terms only, such
as "spirituous," "alcoholic," "vinous," or "malt" and in-
toxicating liquors and beverages, and fails to define
these, then it is for the courts and juries to determine
what articles are within and what are without the stat-
ute. When the article is one which everybody knows
falls within one of the particular classes, such as whis-
ky, brandy, wine, rum, ale, lager beer, etc., then the
courts and the juries know this as well as the public, and
no proof is required to show that it is within the statute;
but if it is "hop jack," "synconic bitters," mead (meth-
eglin), cider, nearbeer, pale beer, etc., then it requires
proof to show that it is within one or the other of these
general terms, unless the law itself enumerates or names
it as being prohibited. The mere fact that one of these
last articles named is a compound, and contains one or
more ingredients which enter into or form a part of
articles which are clearly prohibited, does not make such
compound or article within the prohibited class; that is,
every article that contains alcohol is not prohibited,
because whisky contains alcohol and it is prohibited, or
because it contains malt and lager beer contains malt,
and is prohibited. But if it contains elements and ingre-
dients in such proportion or in such form as to bring
it within one of the general clauses named in the law,
then it is prohibited; otherwise, not. In other words,

[Marks v. The State.]

the term "alcoholic liquors," as used in the law, does not necessarily include every article or compound which. contains alcohol. On the other hand, it does embrace all articles which contain alcohol or malt in such proportions or form or state, which are or may be used as an intoxicating beverage, no matter what it is called, or what else it contains, or for what other purpose it was intended or is used, or for which it may be used, and although the vendor or disposer did not know it contained such ingredients or could be so used as an intoxicating beverage, unless the law expressly so excepts such article or such disposition.—*Carl's Case,* 87 Ala. 17, 6 South. 118, 4 L. R. A. 380; *Wall's Case,* 78 Ala. 417; *Carson's Case,* 69 Ala. 236; *Ryall's Case,* 78 Ala. 410; *Allred's Case,* 89 Ala. 112, 8 South. 56; *Adler's Case,* 55 Ala. 16; *Tinker v. State,* 90 Ala. 648, 8 South. 814; *Watson's Case,* 55 Ala. 159; *Knowles' Case* 80 Ala. 9; *Compton's Case,* 95 Ala. 25, 11 South. 69; *Wadsworth v. Dunnam,* 98 Ala. 610, 13 South. 597; *Freiberg v. State,* 94 Ala. 92, 10 South. 703; *Hinton v. State,* 132 Ala. 29, 31 South. 563; *Feibelman v. State,* 130 Ala. 122, 30 South. 384; *Costello v. State,* 130 Ala. 143, 30 South. 376; *Kansas Liquor Cases,* 25 Kan. 751, 37 Am. Rep. 284; Black, Intox. Liq. §! 1-18; 23 Cyc. pp. 57-63; 17 Am. & Eng. Ency. Law (2d Ed.) pp. 197-206.

The third count of the affidavit or complaint under which this conviction was had is bad, and the demurrer thereto should have been sustained. It is conceded that it attempted to charge, and could only charge, an offense under the prohibition law, which went into effect as to Jefferson county on the 1st day of January, 1908. The affidavit was made on the 1st day of May, 1908. It should have showed that the alleged offense was committed after the 1st day of January, 1908. This was necessary to charge an offense. If the sale had been prior

[Marks v. The State.]

to that date, and within a year, as alleged, it would have been necessary to allege that the sale was "without a license and contrary to law," to be sufficient under the law as it existed at that time. This much was necessary to show that any offense was committed. While the statute in this state dispenses with allegations as to a particular time, unless time is a material ingredient of the offense (Code 1907, § 7139), yet in the case at bar time is a material ingredient—that is, to the extent of showing that it was committed after January 1, 1908.—*Bibb v. State*, 83 Ala. 84, 3 South. 711; *Dentler's Case*, 112 Ala. 70, 20 South. 592; *McIntyre's Case*, 55 Ala. 167; *Glenn's Case*, 158 Ala. 48 South. 505.

As the case must be reversed, it is unnecessary to discuss or pass upon the other assignments of error, for the reason that they may not arise upon another trial; but we feel impelled to say that many of them appear to be well taken. It is proper, however, to say here that we do not mean to imply that it shows any lack of consideration, fairness, or capacity on the part of the trial court, but that the errors, if errors they be, were almost all as to questions which depended upon the construction of the statute and the court was not without authority and reason for the construction he placed upon it, notwithstanding it was not the correct one.

The judgment must be reversed, and the cause remanded.

Reversed and remanded. All the Justices concur.