# Carl *v*. The State.

*Indictment for Selling Spirituous Liquors, or Intoxicating Bitters, contrary to Law.*

1. *"Intoxicating bitters." under prohibitory liquor law.*—Whether a compound, consisting of drugs, barks, or other medicinal substances and alcohol, or spirituous liquor, is within the terms of a statute prohibiting the sale of spirituous liquors or "intoxicating bitters or beverages," depends upon the question whether it is in fact intoxicating; and this is a question of fact for the determination of the jury, on the evidence adduced.

2. *Same.*—If the liquor and other ingredients are used and mixed in such manner and proportions as to counteract the intoxicating force and character of the liquor, fairly constituting a medicine, and rendering its use as a beverage practically impossible, it is not within the statute; but, if the liquor is the predominant element, or sufficiently retains its intoxicating qualities to render the mixture reasonably susceptible of use as a beverage, or as a substitute for the ordinary intoxicating drinks, it falls within the statutory prohibition.

3. *Same.*—If the mixture is intoxicating, when used in ordinary and reasonable quantity, the defendant's ignorance of its character, or his belief that it is not intoxicating, or his intention that it should be used only as a medicine, is no defense to an indictment; but, if it becomes intoxicating only when used in excessive or unreasonable quantities, and is sold as a medicine or tonic, the quantity of alcohol used being only so much as necessary to prevent fermentation, and to extract the medicinal properties of the other ingredients, a conviction can not be had.

FROM the Circuit Court of Escambia.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case was found in October, 1887, and charged that the defendant, H. C. Carl, "sold vinous or spirituous liquors, without a license, and contrary to law;" and in the second count, "that he did unlawfully sell, keep for sale, or otherwise dispose of vinous, spirituous, or malt liquors, or other intoxicating beverages or bitters, within the limits of said county." On the trial, as the bill of exceptions states, the prosecution elected to proceed under the second count, and to rely on a sale to one W. H. O'Bannon, a witness for the prosecution, of a bottle of "Cinchona Bittters," or "Elixir Cinchona and Gentian Compound." The fact of the sale was not disputed, and the only material question was as to the intoxicating properties of the elixir. O'Bannon testified, that he bought it as a medicine for his wife, and gave

[Carl v. The State.]

her one dose according to the prescription, but it nauseated her, and she refused to take any more; and he then continued: "I then concluded to try it, and took two or three drinks out of the bottle, which held a pint or more. I took a wine-glass full each time, and it had the same effect on me as whiskey. The second and third drinks had an effect on me like that of whiskey. It did not exactly taste like whiskey, but I could taste the whiskey in it, and could smell it. It made me dizzy like whiskey, but did not impair my mental faculties in any way, nor interfere with my talking or walking. I stopped drinking it because it affected me in that way. I have seen several persons buy this elixir from the defendant, and get drunk on it." Several other witnesses for the prosecution also testified as to the intoxicating properties of the elixir, both as experienced by themselves, and as manifested in the actions of other persons whom they had seen drink it; and several exceptions were reserved by the defendant to the admission of different parts of this evidence. On the part of the defendant, Dr. J. W. Hale, a druggist in Montgomery, who prepared and sold the elixir, testified, "that it contained gentian-root, bitter orange-peel, cardeman seed, red peruvian bark, snake-root, syrup and water, and enough spirits to prevent fermentation; that there were six pints of water in a gallon of the mixture, one pint of simple syrup, and one pint of proof-spirits; that there was not more than twenty per cent. of spirits in it, and there was not less than that in any liquid medicine manufactured or sold in any drug-store; that less than that would not prevent fermentation; and that the elixir was a tonic and stimulant, but not an intoxicant." Two practicing physicians in Brewton, who had prescribed and used it, testified that the elixir was a stimulant, but not an intoxicant, and that they had never seen any one in the least intoxicated by it when taken as prescribed; and one of them said, "it would nauseate before it would intoxicate." Several other persons, who had bought and used the elixir, testified that it had no intoxicating effect on them; and one of them said, "that he drank it, not according to the directions prescribing the quantity for a dose, but in large quantities to suit himself."

This being the substance of the evidence, the court gave the following charges to the jury, at the instance of the State, the defendant excepting to each of them:

(1.) "The term spirituous liquors is broad enough to embrace any beverage or decoction which contains whiskey,

[Carl v. The State.]

even though it be adulterated with water or other fluid, if this is not done to an extent which impairs its stimulating qualities; and if spirituous or vinous liquor be present as a predominant element, it is immaterial that the bitters or beverage may be qualfied by other ingredients [which] disguise it as a tonic or medicine."

(2.) "If the compound or preparation called *Cinchona Elixir*, or *Cinchona Bitters*, be such that the distinctive character and effect of the intoxicating liquor are gone, that its use as an intoxicating beverage is practically impossible by reason of the other ingredients, it is not within the statute. On the other hand, if the intoxicating liquor remains as a distinctive force in the compound, and such compound is reasonably liable to be used as an intoxicating beverage, it is within the statute; and this though it contains many other ingredients, of an independent and beneficial force in counteracting disease, or strengthening the system."

(3.) "If said compound, or elixir, is intoxicating, and was sold by the defendant as a beverage, and the jury believe this beyond a reasonable doubt; then the defendant would be guilty, if it was sold in this county, within twelve months before the indictment was found."

(4.) "The use to which the bitters or elixir is ordinarily put, the purpose for which it is usually bought, and its effect upon the system, are material facts, from which the intention of the seller may be inferred, if these facts exist here."

The defendant requested the following (with other) charges in writing, and duly excepted to their refusal:

(1.) "The State must convict in this case, if at all, on the sale of the bottle to O'Bannon, as the State has elected this as the one on which a conviction is claimed; and if the jury are reasonably satisfied from the evidence that this bottle was sold by defendant to O'Bannon in good faith as a medicine, and was bought by O'Bannon as a medicine for his wife, and not for a beverage, then they should find the defendant not guilty."

(2.) "The jury can not convict the defendant for a sale of the compound to any one but said O'Bannon, though he may have sold it to ever so many persons, and though they may have got drunk in its use, if they are reasonably satisfied that the bottle sold to O'Bannon was bought and sold in good faith as a medicine, and this is shown by the evidence to the satisfaction of the jury."

(3.) "If the other ingredients in the elixir are medi-

[Carl v. The State.]

cinal, and this is shown by the proof, and the alcohol is used as a necessary perservative, or a vehicle for the medicinal ingredients; if it appears from all the facts and circumstances that the sale of the elixir is of its medicinal ingredients as a medicine, and not of the liquor as a beverage, the seller is protected."

(4.) "Unless the jury believe from the evidence, beyond all reasonable doubt, and to a moral certainty, that the defendant sold the bottle of elixir as a beverage, and not as a medicine, and that the elixir, in its ordinary use, is intoxicating, they should find the defendant not guilty."

(5.) "Although the jury may believe from the evidence that the elixir was intoxicating, yet, if it was sold in good faith only as a medicine, they should acquit the defendant."

(6.) "Although the jury may believe from the evidence that the elixir sold by the defendant to O'Bannon was intoxicating, if sufficient was taken; yet, if it was sold to him by defendant in good faith, as a medicine only, they should acquit the defendant."

(7.) "If the jury believe from the evidence that the elixir sold by defendant to said O'Bannon contained only twenty per-cent. of proof-spirits, and that this amount of alcohol is necessary to extract the medicinal properties of the herbs used in the compound, and to prevent fermentation; that this elixir was manufactured for medicinal purposes, and sold by the manufacturers as a medicine only, and that the reasonable and ordinary use of the decoction will not intoxicate; then, upon this state of facts, without more, if believed by the jury, they can not convict the defendant for selling said elixir to said O'Bannon."

JOHN GAMBLE, and A. A. WILEY, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

CLOPTON, J.—The defendant is charged with the violation of a statute which declares, "it shall be unlawful for any person or persons to sell, keep for sale, or dispose of any spirituous, vinous or malt liquors, or other intoxicating bitters or beverages," within the county of Escambia.—Acts 1884–5, p: 601. The evidence shows that the defendant sold a preparation, which is styled "Elixir Cinchona and Gentian Compound," consisting of herbs and other substances possessing medicinal properties, and alcohol. The

[Carl v. The State.]

defense is, that it is a proprietary medicine, that he sold it in good faith as a medicine, and that it is not an intoxicant.

Whether a compound, consisting of drugs, barks, or other medicinal substances and spirituous liquor, is within the prohibition of the statute, depends upon the question, whether the article sold is, in reality, an intoxicating bitters. If the liquor and other ingredients are used and mixed in such manner and proportions as to counteract the intoxicating force and character of the liquor, fairly constituting a medicine, and rendering its use as a beverage practically impossible, it does not come within the statute. On the other hand, if the liquor is the predominant element, or sufficiently retains its intoxicating qualities so as to render the mixture reasonably susceptible of use as a beverage, or of substitution for the ordinary intoxicating drinks, it is within the statutory prohibition. In *State v Laffer*, 38 Iowa, the rule of distinction is thus stated: "So long as the liquors retain their character as intoxicating liquors, capable of use as a beverage, notwithstanding other ingredients may have been mixed therewith, they fall under the ban of the law; but, when they are so compounded with other substances as to lose the distinctive character of intoxicating liquors, and no longer desirable for use as a stimulating beverage, and are, in fact, medicine, then their sale is not prohibited." This test for determining what compounds may be considered intoxicating within the meaning of the term *intoxicating bitters*, as used in the prohibition laws, was adopted in the opinion delivered in this case on the former appeal. 87 Ala. 17.

The statute, under which defendant is indicted, makes the specific act of selling intoxicating bitters indictable, irrespective of defendant's belief, motive, or intention. His ignorance of the character of the mixture, or his belief that it is not intoxicating, based on a mistake of fact, is no defense. And where there is no exception, taking out of the general provision of the statute sales in good faith for medical purposes, the fact that the article was sold in good faith as a medicine, does not operate to acquit the defendant of a violation of the statute, if it be in reality intoxicating.—*Com. v. Hallett*, 103 Mass. 452; 2 Whart. Cr. Law, §§ 1506–1507; 38 Amer. Rep. 345. This doctrine was emphatically declared in *Carson v. State*, 69 Ala. 235. The defendant in that case, who was a practicing physician, and prescribed the bitters to a patient under his treatment, claimed an

7

acquittal, on the ground that he sold the bitters as a prescription, and in good faith. The statute under which he was indicted, contained no exception in favor of physicians, or any other persons. It was ruled that, there being no exception in the statute, such exception could not be incorporated by the court, and the fact that defendant sold the bitters to a patient in good faith, and as a prescription, was no defense. It was said: "The application of any other rule would be fraught with difficulty, if not impracticability. The frequency of imposture on the one hand, and abuse on the other, would be imminent, and sagacious foresight in this respect may have been a potent reason with the General Assembly for excluding exceptions which found place in former statutes relating to the same subject-matter." These observations are especially applicable in view of the legislative history of the statute under which defendant was convicted. As originally enacted, it contained a proviso, that any licensed practicing physician in the county may keep and dispose of, for medical purposes alone, spirituous or vinous liquors; *provided* that the quantity kept on hand shall in no case exceed five gallons, and they shall be disposed of in no other way than under prescription. By the amendatory act, passed four years thereafter, the exception and proviso were stricken out, so that the statute, as it now stands, contains no exception. The evident purpose of the amendment was, to avoid the devices which had been or might be adopted to evade the law. It is tantamount to a legislative declaration, that intoxicating bitters shall not be sold in the county of Escambia by a physician, or any one else, for medical purposes; and, since the amendment, if the bitters be in fact intoxicating, a sale of them is illegal, although sold to be used as a medicine.—*Com. v. Ramsdell,* 130 Mass. 68. To incorporate an exception of sales of intoxicating bitters in good faith as a medicine, would render the statute easy of evasion, and virtually effect its repeal in this respect.

We do not mean to have it understood, however, that a preparation is considered intoxicating in the estimation of the statute, because it may intoxicate if used in unreasonable and excessive quantities. The excessive and immoderate use of any preparation, in which alcohol is used in sufficient quantity to preserve the other ingredients, may intoxicate; but the mixture does not fall under the ban of the statute because spirituous liquor is present. The true inquiry is,

[Little v. The State.]

whether the liquor used is necessary to extract and preserve the medicinal properties of the other ingredients, and its distinctive intoxicating character is so counteracted, or greatly impaired, that its reasonable and ordinary use will not intoxicate—whether it is, in reality, a medicine. If the compound, as one of the medical witnesses testified in respect to the elixir in question, would nauseate before it would intoxicate, it is not desirable, and is not reasonably susceptible of being used as a beverage, or as a substitute for the ordinary intoxicating drinks.

The charges given, and the refusals to charge, are in accordance with these views, except the refusal to give the instruction asked by the defendant, to the effect, that if the jury believed the amount of alcohol used is necessary to extract the medicinal properties of the herbs used, and to prevent fermentation; that the elixir was manufactured for medicinal purposes, and sold by the manufacturers as a medicine only; and that its reasonable and ordinary use will not intoxicate, then the defendant can not be convicted. This charge should have been given. We discover no error in the rulings of the court on the evidence.

Reversed and remanded.