WELLS FARGO & COMPANY EXPRESS *v.* STATE.

Opinion delivered June 18, 1906.

1.  GAME—SHIPMENT BEYOND STATE—GUILTY KNOWLEDGE OF CARRIER.— Under Kirby's Digest, § 3620, providing among other things that it shall be unlawful to ship game beyond the lines of this State,

and that any railroad or express company which shall receive any game for shipment beyond the State line shall be guilty of a misdemeanor, and fined accordingly, where an express company received packages containing game for shipment beyond the State, it is no defense that the express company and its agents had no knowledge that the package contained game.    (Page 351.)

2.  SAME—CONSTITUTIONALITY OF STATUTE.—Kirby's Digest, § 3620, providing that it shall be unlawful to ship game beyond the State, is not unconstitutional, in so far as it applies to game killed without the State, as the act of Congress of May 25, 1900, makes operative the game laws of the States on game brought into the State.    (Page 352.)

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*Read & McDonough,* for appellant.

1.   It is admitted that it was not necessary to allege nor prove an intent to violate the law in this case, but it was admissible for the defendant to prove that it had been imposed upon by the shipper, and that it was ignorant of the fact that it was receiving game for shipment.    Proof of justification or excuse must come from the defendant.    48 Ark. 27.    See also 1 Bishop's Crim. Law, § 303.

2.   The act (Kirby's Digest, § 3620) is unconstitutional, because by its terms it applies not only to game killed within this State, but also to game killed in other States and shipped through or out of this State.    134 Fed. 282; Kirby's Digest, § 3618; 102 Fed. 540; 86 N. Y. Supp. 272; 164 N. Y. 100; 92 U. S. 214.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

1.   If the act stated that the offense consisted in "knowingly receiving" game for shipment, appellant's contention would be sound; but the offense is completed in the acceptance of the game for shipment.    Kirby's Digest, § 3620; 69 Ark. 185; 36 Ark. 58; 37 Ark. 108; *Ib.* 219; *Ib.* 399.

2.   This court has decided that the act is constitutional. 56 Ark. 267.

HILL, C. J.    At Mena, Polk County, Arkansas, W. H. Graves delivered to the appellant express company for shipment to Senter Commission Company, at St. Louis, Missouri, three packages of furs.    A constable with a search warrant opened the

packages while in the possession of the Express Company, and found they contained game, a saddle of venison and eight wild turkeys. The circuit court, without a jury, tried the case, and found that the agent and employees of the express company were without knowledge that the packages contained game. The court found the appellant guilty by reason of having received the game for shipment, and the express company appeals.

Two questions are presented by appellant.

1. That the evidence that the agent and employees—the company itself—had no knowledge that the packages contained game should have been held a defense.

2. That the act under which the proceeding was based is unconstitutional.

1. The statute is as follows: "It shall be unlawful for any person or persons, or corporation, to ship, export or carry beyond the lines of this State any deer, turkey, wild fowl, game fish, or game of any description; and any railroad company, express company, corporation or individual, who shall ship, export, or carry, or receive for shipment, or export, or carry beyond the State line of Arkansas, any game fish, deer, turkey, or game of any kind, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than $100 or more than $500 for each separate offense." Section 3620, Kirby's Digest.

That it is competent for the Legislature to make the receipt of game for shipment an offense, irrespective of knowledge or intent, can not be gainsaid. Clark's Crim. Law, p. 84.

If a statute makes the offense consist in knowingly or willfully doing or omitting to do an act, then there is nothing left for construction; but when, as in this instance, the statute omits such words, then it is a matter of construction, from the subject-matter and the evil to be remedied, whether such words are to be implied, or the statute enforced as written. Many statutes which are in the nature of regulations for the protection of health, morals or other public concerns are considered as making criminal the forbidden act, notwithstanding ignorance or mistake of the doer. Clark's Criminal Law, pp. 84, 86.

This court has approved this statement of the doctrine: "Where a statute commands that an act be done or omitted which, in the absence of such statute, might have been done without cul-

pability, ignorance of the fact or state of things contemplated by the statute will not excuse its violation;" and applied it to a sale of liquor to a minor irrespective of ignorance of his minority. *State* v. *Redmond,* 36 Ark. 58.

Judge Cooley, while Chief Justice of Michigan, and speaking for the court, said:

"Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible." *People* v. *Roby,* 52 Mich. 579, s. c. 50 Am. Rep. 270.

Many instances of such statutes are given in the cases and the text book cited. Without attempting to formulate any rule on the subject, suffice it to say that the statute in question seems to be exactly of the kind where ignorance does not excuse, and where criminal intent is not necessary. Doubtless, such statutes work individual cases of hardship, as the one at bar, where the company was imposed upon; but, unless the Legislature had made the act itself the crime, there would have been no use in passing the law. The ease with which game and fish could be enclosed in packages to deceive the express agents would render a statute against knowingly receiving game or fish an idle form. Similar reasons were given for holding the offense complete without guilty intent in many of these cases.

2. Is the statute constitutional? It was held so in *Organ* v. *State,* 56 Ark. 267; but counsel contend that the only point decided in that case and in *Geer* v. *Connecticut,* 161 U. S. 519, was as to the validity of such a statute when acting upon game killed within the State, and that this statute applies equally to game killed without the State or to game killed within the State, and is for that reason unconstitutional. It might be answered that the game in question was not shown to have been killed beyond the borders of the State, and the burden was upon the appellant. 1 Bishop, Cr. Law, § 303, par. 3. But, meeting the argument as broadly as it is made, it will be found that the appellant is equally guilty, whether the game was killed in Polk County or across the border in the Indian Territory and brought into Mena for shipment. Following the precedent which was sustained in In re *Rahrer,* 140 U. S. 545, the Congress conferred

upon the States in the "Lacey Act" a police power, not hereto-
fore possessed, of making operative their game laws on game
brought into the State.    Act Cong. May 25, 1900.    This act was
intended to aid the States in the enforcement of their game laws
by rendering them equally applicable to game imported into the
State as to game killed within the State.    It is fully discussed in
a recent opinion of Chief Judge Cullen speaking for the Court
of Appeals of New York, *People* v. *Hesterberg,* 76 N. E. Rep.
1032.    The decision of that eminent court is undoubtedly sound.

The judgment is affirmed.