(75 South. 343)

STATE ex rel. BLACK v. SOUTHERN EXPRESS CO. et al. (6 Div. 244.)

(Supreme Court of Alabama.  April 19, 1917.)

1. COMMERCE ☞85 — INTERSTATE COMMERCE COMMISSION—POWERS.

The powers vested in the Interstate Commerce Commission by act of Congress cannot be exercised in opposition to applicable valid laws subsequently enacted by Congress.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138.]

2. COMMERCE ☞8(11) — TRANSPORTATION OF INTOXICATING LIQUORS — INTERSTATE COMMERCE.

The inherent limitations on the territorial operation of state laws cannot protect an interstate carrier in accepting outside the state intoxicating liquors for transportation into Alabama in violation of the statutes of Alabama, since Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (U. S. Comp. St. 1916, § 8739), has appropriated the rule of the state law to define a national prohibition against the unlawful entry of certain liquors in interstate commerce.

3. COMMERCE ☞33—TRANSPORTATION OF INTOXICATING LIQUORS — INTERSTATE COMMERCE.

Where an interstate consignment of liquor is intended by any person interested in same to be a means of violating a valid state law governing the liquors described in the Webb-Kenyon Act, it does not become an article of lawful interstate commerce, nor can an interstate carrier accepting and delivering same invoke the law applicable to lawful interstate commerce to justify transportation and delivery of the shipment.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81.]

4. STATUTES ☞225¼—CONSTRUCTION.

The statutes enacted during the session of the Legislature of 1915 relating to the subject of temperance are in pari materia and should be so construed.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 304.]

5. COMMERCE ☞33—TRANSPORTATION OF INTOXICATING LIQUORS — INTERSTATE COMMERCE—INSPECTION OF RECEPTACLES—"FORBIDDEN COMMERCE."

If a carrier would avert the consequences of contributing to a violation of Gen. Acts 1915, p. 555, § 5, by transporting and delivering liquors in forbidden receptacles, it must inspect the tenders of such shipments as are labeled in accordance with Pen. Code U. S. § 240 (Act March 4, 1909, c. 321, 35 Stat. 1137 [U. S. Comp. St. 1916, § 10410]), since, if a package tendered for shipment in another state violates the laws of Alabama when brought therein because of the use of containers of forbidden capacities, the package is "forbidden commerce" within the

Webb-Kenyon Act, and the carrier cannot claim the protection accorded interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81.]

6. INTOXICATING LIQUORS ☞138—TRANSPORTATION — INTERSTATE COMMERCE — INSPECTION.

Gen. Acts 1915, p. 46, § 14, prohibiting the delivering carrier from opening on the premises in Alabama an original package, does not excuse an interstate carrier's failure to inspect liquors tendered for shipment from without the state to a point within the state; the operation of such section being restricted to its purpose to prevent the apportionment of or distribution of the contents of a shipment of liquor at destination on the premises of the carrier.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 148.]

7. CRIMINAL LAW ☞21—POWER TO DEFINE AND PUNISH CRIME—WRONGFUL INTENT.

The rule that a wrongful act and a wrongful intent must concur to constitute a crime does not deny to the state the power to create and define as a crime the mere doing of an act which but for the statute would not be an offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 22.]

8. INTOXICATING LIQUORS ☞138—TRANSPORTATION—INTERSTATE COMMERCE.

A carrier will not be held to receive at peril of offending the prohibitory and regulatory laws of Alabama consignments of intoxicating liquors destined for transportation into and for delivery in Alabama, where they were free from cause of suspicion that they contained prohibited liquors in receptacles of forbidden capacities.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 148.]

9. INTOXICATING LIQUORS ☞138—TRANSPORTATION—INTERSTATE COMMERCE.

Unless otherwise advised, either of the fact that an unlabeled package contains liquors within the description of Pen. Code U. S. § 240, or of circumstances reasonably calculated to arouse suspicion or inquiry with respect to that fact, the carrier to whom a shipment for transportation and delivery in Alabama is offered without the state may rely on the absence from a package of the label required by such section as negativing the presence therein of forbidden liquors in receptacles of prohibited capacities.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 148.]

Appeal from City Court of Birmingham; H. A. Sharpe, Judge.

Injunction by the State, on relation of Hugo L. Black, Solicitor, against the Southern Express Company and others. From decree for defendants, plaintiff appeals. Reversed and remanded, with directions.

The following is the Reed Amendment referred to in the opinion:

No letter, postal card, circular, newspaper, pamphlet, or publication of any kind containing any advertisement of spirituous, vinous, malted, fermented, or other intoxicating liquors of any kind, or containing a solicitation of an order or orders for said liquors, or any of them, shall be deposited in or carried by the mails of the United States, or be delivered by any postmaster or letter carrier, when addressed or directed to any person, firm, corporation, or association, or other addressee, at any place or point in any state or territory of the United States at which it is by the law in force in the state or territory at that time unlawful to advertise or solicit orders for such liquors, or any of them, respectively.

If the publisher of any newspaper or other publication or the agent of such publisher, or if any dealer in such liquors or his agent, shall knowingly deposit or cause to be deposited, or shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of the provisions of this section, or shall knowingly deliver or cause to be delivered by mail anything herein forbidden to be carried by mail, shall be fined not more than $1,000 or imprisoned not more than six months, or both; and for any subsequent offense shall be imprisoned not more than one year. Any person violating any provision of this section may be tried and punished, either in the district in which the unlawful matter or publication was mailed or to which it was carried by mail for delivery, according to direction thereon, or in which it was caused to be delivered by mail to the person to whom it was addressed.

The Postmaster General is hereby authorized and directed to make public from time to time in suitable bulletins or public notices the names of states in which it is unlawful to advertise or solicit orders for such liquors.

Hugo L. Black, of Birmingham, pro se. Robert C. Alston, of Atlanta, Ga., and Tillman, Bradley & Morrow, of Birmingham, for appellee.

McCLELLAN, J. This is a bill for injunction to prevent certain acts or conduct by an interstate common carrier, an express company, relating to or concerning the subject of the prohibition or regulation of the use or consumption of intoxicating liquors. The party complainant is the state of Alabama, the relator being the solicitor of Jefferson county. The respondents are the Southern Express Company, a corporation, and two of its agents engaged in its service at Birmingham, Jefferson county, Ala. If the bill's averments are sufficient to justify or to require the injunctive relief sought thereby, the jurisdiction and power of the court of equity to grant and effect that relief is created and established by section 11 of the act approved September 25, 1915. Gen. Acts, 1915, p. 557. That section reads:

"Sec. 11. That when any violation of this act, or any law for the promotion of temperance is threatened, or shall have occurred, the doing of, or continuation or repetition of the unlawful act, or any of like kind by the offending party, may be prevented by writ of injunction out of a court of equity upon a bill filed in all respects as in cases of liquor nuisances and of violation of the law against advertising liquor; in like manner the writ of injunction may be employed to compel obedience to any rule or regulation prescribed by any such law."

The submission for the issuance of the writ was on the original bill and sworn answer. Code, § 4529. The injunction prayed was denied, and the state appeals.

The charges asserted in the bill and the acts or conduct sought to be controlled by the injunction prayed may be thus summarily stated:

"(1) That since September 25, 1915, the respondents received or had in their possession prohibited liquors received from Wray Liquor

Company in quantities of more than one quart and in bottles or receptacles of the capacity of less than one quart.

"(2) That since March 1, 1915, the respondents have advertised the manufacture, sale, etc., of prohibited liquors or the person from whom or the place from which the same might be obtained, or have circulated price lists, order blanks, or other matter for the purpose of inducing or securing orders for prohibited liquors.

"(3) On information and belief, that the respondents now have in their possession such advertisements contained and inclosed in packages together with shipments of whisky, and are circulating such advertisements of prohibited liquors by delivering said packages of prohibited liquors.

"(4) That respondents have in their possession a package containing two quarts of whisky consigned to J. T. Levie, the order for which was solicited by reason of a price list or order blank previously received by said Levie in a package of whisky previously delivered to him by the Southern Express Company.

"(5) That respondents have in their possession a package containing spirituous, vinous, or malt liquors consigned to Leona Drake, the order for which was received because and on account of an advertisement she received through the United States mail from Markstein & Co.

"(6) That respondents have delivered to numerous persons liquors which have been ordered by them, and which orders have been solicited or received contrary to the statutes in such cases made and provided.

"(7) That the respondents delivered to Nick Emerson Davis whisky which was consigned to Jim Wilson without a genuine order therefor, and delivered to a woman whisky consigned to Ed Mixon, without a genuine order from said Mixon, and delivered to a negro woman whisky consigned to Tommy Mitchell without a genuine order from said Mitchell; and delivered to some person other than George Robinson whisky consigned to the said Robinson.

"(8) That certain liquor dealers doing business in foreign states have circulated in and around Birmingham, Ala., advertisements of liquors and received orders as a result thereof, and shipments of liquors on account of said orders have been delivered by respondents in Jefferson county, and that respondents now have in their possession shipments so ordered."

The defenses set forth in the sworn answer may be thus summarily stated:

"(1) That they did not at any time or place charged in the bill of complaint knowingly deliver or have in their possession any prohibited liquors nor any liquors in prohibited receptacles or bottles, nor was any such liquors or prohibited receptacles delivered or possessed by them with their consent, procurement, or connivance.

"(2) That they did not knowingly deliver or have in their possession any advertising matter, circulars, price lists, order blanks, etc., as charged in the bill, nor was the same delivered or possessed by them with their consent, connivance, or procurement.

"(3) That the Southern Express Company is a common carrier; that the laws of the state of Alabama recognize spirituous, vinous, and malt liquors in certain quantities as property, and as a legitimate article of commerce; that as such common carrier it is authorized and compelled both by the laws of Alabama and of the United States to carry and deliver the same as such commerce; that all the shipments complained of originated and were received at points outside of the state of Alabama, and were labeled, marked, sealed, and packed in conformity with and according to the laws of the United States, which latter laws prescribe the method and manner in which the same shall be carried between states; that said laws of the United States, as well as the laws of Alabama, prohibited the opening of

200 ALA.—3

said packages, and respondent had no lawful and reasonable means of ascertaining the contents of the packages delivered by it, and that there was nothing in the appearance of said packages to arouse the suspicion of respondents or put them on notice that prohibited liquors or advertising matter was being transported therein; that, federal Congress having taken jurisdiction over the subject-matter of shipments of liquors, the state of Alabama is thereby excluded from legislating on the same matter.

"(4) That, as far as the advertising matter complained of is concerned, said matter was received by said common carrier at a point outside of Alabama and was delivered in its original package to the consignee, and that the act of Congress known as the Webb-Kenyon Bill does not apply thereto.

"(5) That they have not circulated any advertising matter within the meaning of the law of the state of Alabama.

"(6) That shipments of intoxicating liquors for lawful use are protected by the commerce clause of the United States, and it is not claimed that said intoxicating liquors were shipped for the purpose of violating any law of the state of Alabama.

"(7) That the anti-advertising bill in so far as it applies to interstate shipments and delivery in original packages is unconstitutional and void.

"(8) That the said act of Congress known as the Webb-Kenyon Bill violates the federal Constitution and is unconstitutional and void.

"(9) That no crime has been committed by them, none threatened to be committed, and that no necessity is shown for the relief sought.

"(10) That the injunction, if granted in response to the several prayers of the bill, could not well be enforced because it could not be reasonably and legally obeyed."

All of the shipments referred to in the pleadings originated outside of the state of Alabama, and were consigned for delivery at points in Alabama. The traffic in intoxicants in this state has been prohibited, to the legislatively avowed end of promoting temperance and of preventing drunkenness. Sou. Ex. Co. v. Whittle, 194 Ala. 406, 69 South. 652, 675–678, L. R. A. 1916C, 278. In addition, valid ancillary prohibitions and regulations, reasonably conceived to be in aid of the stated major purposes entertained by the lawmakers, have been enacted. Sou. Ex. Co. v. Whittle, supra; Purity Ex. Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184; Feibelman v. State, 130 Ala. 122, 30 South. 384; Marks v. State, 159 Ala. 71, 80, 48 South. 864, 133 Am. St. Rep. 20. Many of the laws of Alabama token and validly effectuate a purpose to avail of the opportunity afforded the state by the federal Webb-Kenyon Act, to promote temperance and to prevent drunkenness. Sou. Ex. Co. v. State, 188 Ala. 454, 66 South. 115; Sou. Ex. Co. v. Whittle, supra. Through the recent decision delivered by the Supreme Court of the United States, in response to the appeals of the James Clark Distilling Company against the railway company, the express company and the state of West Virginia, the constitutional validity of the Webb-Kenyon Act was broadly, completely affirmed. 242 U. S. 317, 37 Sup. Ct. 180, 61 L. Ed. 326. In determining its validity Chief Justice White, speaking for the court, said:

"It is true the regulation which the Webb-Kenyon Act contains permits state prohibitions to apply to movements of liquor from one state into another, but the *will* which causes the prohibitions to be applicable is *that of Congress,* since the application of state prohibitions would cease the instant the act of Congress ceased to apply." (Italics supplied.)

In eliminating from consideration "the leading state case cited," Van Winkle v. State, 27 Del. (4 Boyce) 578, 91 Atl. 385, Ann. Cas. 1916D, 104, the court said:

" * * * It [the Van Winkle Case] necessarily rested upon an entire misconception of the text of the Webb-Kenyon Act, because that act did not simply forbid the introduction of liquor into a state for a prohibited use, but took the protection of interstate commerce away from all receipt and possession of liquor prohibited by state law."

The appeal in Southern Ex. Co. v. Whittle, 194 Ala. 406, 69 South. 652, L. R. A. 1916C, 278, evoked from this court a decision justifying the carrier in its refusal to receive at Pensacola, Fla., for transportation to and delivery at Ramer, Ala., a shipment of whisky that exceeded in amount the quantity of whisky a person might, under the laws of Alabama, receive during the prescribed period, or have in his possession in Alabama, at one time, for personal use only. The theory upon which the decision in the Whittle Case proceeded was that an interstate carrier to which a shipment of prohibited liquors was tendered outside of the state, to be transported and delivered in Alabama, could, in consequence of the effect wrought by the Webb-Kenyon Act when vitalized by valid state enactment, decline to receive such consignment that, to transport and deliver to a consignee in Alabama, would constitute or contribute to a violation of the statutes of Alabama governing the receipt, delivery, or possession of prohibited liquors. In that instance the proffered shipment contained six quarts of whisky; whereas the limit permitted by law to a single consignee or consignment was two quarts of whisky. There the carrier knew that the shipment contained a quantity of whisky in excess of the limit fixed by Alabama law for that class of liquor. According to the interpretation given the Webb-Kenyon Act by the Supreme Court in its deliverance supra and by this court in Whittle's Case, supra, the Congress has *prohibited* in positive terms, though without penalty, "the shipment or transportation in *any* manner or by *any* means" in interstate commerce "any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind" where the liquor is "intended, by any person interested therein, to be received, possessed, sold, or in any manner used either in the original package or otherwise, in violation of *any* law of such state, territory, or district of the United States." (Italics supplied.)

We may digress from the thread of the opinion to note the obvious fact that the provisions of the Webb-Kenyon Act have no application to or effect upon interstate commerce in the matter of soliciting or advertising the traffic in liquors described in the Webb-Kenyon Act and prohibited by state laws, though, through amendment numbered 34 of the Postal Bill, called the "bone-dry" Reed Amendment, effective July 1, 1917, the Congress has very recently enacted specific, yet comprehensive, prohibitions governing that subject. The report of the appeal will contain this amendment.

The Webb-Kenyon Act being the valid expression of the national authority, though to define it the rule (not the penalty) of pertinent state prohibitory enactment is expressly appropriated by the Congress (Whittle's Case, supra), it is a federal law of equal dignity with sections 238, 239, and 240 of the federal Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1136, 1137 [U. S. Comp. St. 1916, §§ 10408–10410]). The act and these sections are to be considered and applied as laws given by the same supreme authority in their fields of operation; and, if the sections contain provisions opposed to the provisions of the Webb-Kenyon Act, the act, a later enactment, must prevail. The like observation is applicable to that part of section 15 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1916, § 8583]) which counsel for appellee thus quote in their supplemental brief:

"It shall be unlawful for any common carrier subject to the provisions of this act, or any officer, agent, or employé of such common carrier, or for any other person or corporation lawfully authorized by such common carrier to receive information therefrom, knowingly to disclose to or permit to be acquired by any person or corporation other than the shipper or consignee, without the consent of such shipper or consignee, any information concerning the nature, kind, quantity, destination, consignee, or routing of any property tendered or delivered to such common carrier for interstate transportation, which information may be used to the detriment or prejudice of such shipper or consignee, or which may improperly disclose his business transactions to a competitor; and it shall also be unlawful for any person or corporation to solicit or knowingly receive any such information which may be so used: Provided, that nothing in this act shall be construed to prevent the giving of such information in response to any legal process issued under the authority of any state or federal court, or to any officer or agent of the government of the United States, or of any state or territory, in the exercise of his powers, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime; or information given by a common carrier to another carrier or its duly authorized agent, for the purpose of adjusting mutual traffic accounts in the ordinary course of business of such carriers.

"Any person, corporation, or association violating any of the provisions of the next preceding paragraph of this section shall be deemed guilty of a misdemeanor, and for each offense, on conviction, shall pay to the United States a penalty of not more than one thousand dollars."

Section 238, cited ante, prohibits, under penalty, any officer, agent, or employé of any railroad or express company or other common carrier from knowingly delivering

or causing to be delivered to any person other than the bona fide consignee unless upon his written order, or to any fictitious person, or to any person under a fictitious name, consignments of described liquors. Section 239 prohibits, under penalty, the carrier, or any other person connected with the interstate transportation of the liquors therein described, from acting or serving as a collect on delivery agency or for acting or serving as the agent of either the buyer or seller in respect of the sale or delivery of the liquors described in the statute, and section 240 provides, as here material, as follows:

"Whoever shall knowingly ship or cause to be shipped, from one state, * * * into any other state, * * * or from any foreign country into any state, * * * any package of or package containing any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein, shall be fined not more than five thousand dollars. * * * "

[1] It is entirely clear that, so far as the exercise by the Interstate Commerce Commission of the powers and authority committed to it by Congress in respect of the interstate shipment of liquors, those powers and that authority are derivative only, and of course cannot be exercised in opposition to applicable laws validly subsequently enacted by the Congress, the creator of the Interstate Commerce Commission. The matter of rules of the Interstate Commerce Commission touching the matter of the character of the package in which liquors are tendered for shipment from one state into another must be laid out of the case; for the questions presented revolve about the effect of laws enacted by Congress.

[2, 3] So, too, the suggestion that state laws cannot, because of their inherent limitations in respect of territory and authority, have effect beyond the confines of the sovereignty enacting them, is, though of course sound, inapplicable in this instance, since the Webb-Kenyon Act has by its terms appropriated the rule of the state law to define a national prohibition against the lawful entry of certain liquors in interstate commerce (Whittle's Case, supra), with the result to attend that, if a consignment of liquors is intended by any person interested therein to be the subject, instrumentality, or other means of violating a valid state law governing the liquors described in the Webb-Kenyon Act, it cannot be and does not become an article in interstate commerce, and is not protected by the rules of law applicable to lawful interstate commerce, and a carrier or person concerned in its interstate transportation, its acceptance or delivery, cannot invoke the rule of law applicable to lawful interstate commerce to protect or to justify such carrier or person in respect of the carrier's or person's connection or service in transporting or delivering the shipment thus forbidden lawful entry into interstate commerce. In short, as this court declared in the Whittle Case, supra, such a forbidden consignment thereof is just as if there was no clause in the federal Constitution committing to the national government supreme power over the subject. Since the national government is one enjoying delegated powers only, committed to it by the states, it follows that, if the federal Constitution bore no grant of supreme power over interstate commerce, the states of the Union could freely forbid the introduction in them of whatever articles of commerce they choose; but it was the purpose of the grant to the national government of supreme power over interstate commerce to avoid unwarranted interference by individual states with commerce between the states; and the complete delegation of this supreme, exclusive power to the national government operated to vest therein the necessary authority to determine what should be capable of being or becoming an element of interstate commerce. It is a consequence of these considerations, coupled with the manifest effect of the Webb-Kenyon Act, that all argument predicated of the doctrine that the state cannot govern through its enactments subjects which are exclusively committed to the authority of the national government is vain is inapplicable in this instance, since the questions presented are to be determined, so far as the interstate character or quality of the consignments of liquors is concerned, upon the status made by the enactments of the Congress, not by those of the state.

Sections 238–240 of the federal Penal Code and the quoted part of section 15 of the Interstate Commerce Commission Law all contemplate consignments that may lawfully become elements of interstate commerce, whereas the Webb-Kenyon Act's object and effect is antecedent to the regulations afforded by those laws and defines, through exclusion, what consignments of liquors therein described shall not be entered into and cannot become elements of interstate commerce. The operative quality of the Webb-Kenyon Act is active and applicable when at the time a shipment of liquors is tendered by the shipper to the carrier for entry into interstate commerce; and whether, under the Webb-Kenyon Act, the shipment is or is not capable of lawful entry into interstate commerce, of being constituted a lawful element of interstate commerce, is an inquiry then and there instituted, not in virtue of the extraterritorial effect of a state law, but in virtue of the definitive mandate of the Webb-Kenyon Act, which is the expression of the federal authority only, an expression that defines the national will by effective appropriation of rules, of prohibitions provided by valid state enactments.

Section 5 of the Alabama act approved September 25, 1915 (Gen. Acts, p. 555), provides:

"That when more than one quart of the liquors mentioned in section 1 of this act, or prohibited liquors, is received or had in possession, it must be in bottles or receptacles of the capacity of not less than one quart, and when a quart or less is so received or possessed, it must be contained in one receptacle or bottle. Failure to observe these provisions, or either of them, shall constitute prima facie evidence that the said liquors are kept, or had in possession for sale, or other unlawful disposition; and it shall be unlawful to receive or possess the liquors in quantities mentioned in receptacles or bottles that do not conform to the above requirements; but this section shall not apply to malted or similar fermented liquors, such as beer, lager beer, ale, or porter."

Section 2 of the same act (Gen. Acts, pp. 553, 554) provides:

"In order to prevent frauds upon the law which have been practiced, and to assure the delivery of liquors in nonprohibited quantities, and under nonprohibited conditions by carriers, or others, to be made only to bona fide consignees, or to another upon their genuine orders, it is hereby enacted that when a written order is presented to a carrier, or its delivering agent purporting to have been given by the consignee for the delivery to the person named in the written order, of liquors of the kind respectively, as named in section 1 of this act, delivery may be made, if otherwise legal, upon the following terms, and not otherwise: (1) If the carrier or its delivering agent from familiarity with the handwriting of the consignee, knows the signature of the order to be genuine; or (2) if the signature thereto be attested by any one of the following officers in the county: a circuit clerk, probate judge, sheriff, or other circuit judge, justice of the peace, notary public, city marshal, chief of police, city recorder or a postmaster."

Section 15 of the same act (Gen. Acts, p. 558) provides:

"That any common carrier, carrier or agent of either or other person violating any of the provisions of this act, or failing to comply with any requirements thereof, shall be guilty of a misdemeanor," punishable as prescribed in that section.

Section 23 of the Alabama act adopted January 27, 1915 (Gen. Acts, p. 48), contains penal provisions for that act like those provided in section 15, ante. Section 1 of the last-cited act provides:

"That it shall be unlawful for any railroad company, express company, or other common carrier, or any officer, agent or employé or any of them, or any other person to ship or to transport into, or to deliver in this state in any manner, or by any means whatsoever, any spirituous, vinous, malted, fermented or other intoxicating liquors of any kind from any other state, territory or district of the United States, or place noncontiguous to, but subject to the jurisdiction of the United States, or from any foreign country, to any person, firm or corporation within the territory of this state, when the said spirituous, vinous, malted, fermented or other intoxicating liquors, or any of them, are intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package, or otherwise, in violation of any law of this state now in force, or in violation of any law that may be hereafter enacted in this state, or take effect therein."

[4] The several laws of this state enacted during the session of the Legislature of 1915 relating to the subject of temperance are in pari materia and are to be so construed.

Under our statutes a common carrier and the receiptor offend the prohibitions of Alabama if the package of whisky the carrier transports from a point without this state to, and for delivery in, this state contains one quart or more in receptacles of less capacity than one quart. The validity of statutes prescribing such requirements as to the capacity of receptacles cannot be soundly questioned under the established conceptions of the permissible exercise of the police power by the state. Whittle's Case, supra; 23 Cyc. p. 83. The statutes forbidding interstate transportation and delivery in this state of packages of intoxicants in prohibited receptacles do not require knowledge of the carrier as an element of the offense that may be committed in transporting into and delivering in this state whisky in forbidden receptacles. In terms the Webb-Kenyon Act excludes from lawful entry in interstate commerce liquors that are intended by any person interested therein to be received, possessed, sold, or in any manner used in violation of the state law. Under the valid statutes in force in Alabama the receipt or possession of whisky in receptacles of the forbidden capacity is an offense. In those circumstances an inspection of the contents of the package, labeled as section 240 of the federal Penal Code requires, will disclose the fact that the liquor is contained in receptacles of forbidden capacity; and hence to inspect the contents of such package would advise the carrier that some one interested therein intended the violation of the state law through its receipt or possession, or both.

[5] If the carrier would avert the consequences of contributing to a violation of the state laws through the means of service in transporting and delivering liquors in forbidden receptacles, the carrier must inspect the tenders of such shipments as are labeled in accordance with the requirements of section 240 of the federal Penal Code, or else act at the peril of becoming an offender of the state's laws in this respect; for, if a package tendered for shipment in another state is offensive to the laws of this state, when brought therein, because of the use of containers of forbidden capacities, the package is "forbidden commerce" under the provisions of the Webb-Kenyon Act, and the carrier cannot claim the protection accorded innocent elements of interstate commerce.

There is nothing in any federal law to which we have been referred that intends to prevent or in fact inhibits, in any degree, the right of the carrier to inspect a thus labeled, proffered shipment of the liquors described in the Webb-Kenyon Act, to the end that the interstate carrier may be sufficiently advised to enable it to decline to receive for transportation and delivery a consignment that is not, cannot become, an element of lawful interstate commerce, and to the further end that such carrier may advisedly govern its course so as to avoid offending the prohibitory laws of this state wherein de-

livery is contemplated. If there was, the necessary implication from the provisions of the Webb-Kenyon Act would be that the interstate carrier was by the latter law vested with the affirmative precedent right to see that its public service was not prostituted to the transportation and delivery of an article that the national authority had forbidden entry into interstate commerce, and so with the result that the later law would govern and justify the carrier in refusing a labeled shipment of liquor that was not submitted to an appropriate inspection by the carrier. Com. v. Mixer, 207 Mass. 141, 93 N. E. 249, 31 L. R. A. (N. S.) 467, 20 Ann. Cas. 1152. These considerations are reinforced by the suggestion of manifest reason and justice that no one should be made an offender against the law unless he is afforded means and opportunity to avoid the act or omission that constitute the offense, unless there is accorded him at least the opportunity of a choice between doing or leaving undone that which he is required to do or not to do and of doing or omitting to do that which if not done or not omitted will prevent his being an offender of the law.

[6] The provisions of section 14 of the Alabama act adopted January 27, 1915 (Gen. Acts, p. 46), forbidding, among other things, the opening upon the premises in Alabama by the delivering carrier or person of an original package, were intended to prevent the apportionment or distribution thereof of the contents of a shipment, and thereby contribute to the restriction of the importation of liquors to individuals through individual orders and consignment, with the further result to attend of enforcing the limitations fixed by the laws of this state upon the amount of liquor that might be lawfully received and possessed by an individual in Alabama. The operation of this feature of section 14 is restricted to its purpose. It neither has nor can be accorded any extraterritorial effect. Its rule cannot be asserted by the interstate carrier as a reason or excuse for the carrier's omission or declination to inspect liquors tendered for shipment from without to points within Alabama. The fact that an interstate carrier is forbidden by the laws of Alabama to open or to permit the opening on its premises in Alabama of shipment of liquors cannot palliate or justify the failure of such carrier to inspect the package at the point outside of Alabama when it is tendered for transportation to and delivery in Alabama. To accord this statute any other effect in this regard would be to extend its operation beyond the confines of the sovereignty enacting it.

[7] This court has recognized the general rule that a wrongful act and a wrongful intent must concur to constitute a crime. Gordon v. State, 52 Ala. 308, 23 Am. Rep. 575; Adler v. State, 55 Ala. 16, 23; Dotson v. State, 62 Ala. 141, 144, 34 Am. Rep. 2. While that is the general rule, its acceptance does not involve a denial of the power of the state to create and define as a crime the mere doing of an act which but for the statute would be innocent of offense. In People v. Roby, 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270, Judge Cooley wrote:

"I agree that as a rule there can be no crime without a criminal intent; but this is not by any means a universal rule. * * * Many statutes which are in the nature of police regulations * * * impose criminal penalties irrespective of any intent to violate them, *the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.*" (Italics supplied.)

This decision has been widely considered. 19 Notes to Am. Rep. pp. 892, 893. The like doctrine was in the mind of this court when it said in Dotson v. State, 62 Ala. 145, 34 Am. Rep. 2:

"A criminal intent is generally an element of crime, but 'whatever one voluntarily does he of course intends to do,' and whenever an act is criminal under particular circumstances, the party doing the act is chargeable with the criminal intent."

The court then cited Com. v. Mash, 7 Metc. (Mass.) 472, a deliverance by Judge Shaw, in which it was said:

"If the statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it."

The statements made by Judge Shaw in that case doubtless suggested, if they did not afford the basis for, these lucid, fundamental observations of Justice Holmes in Commonwealth v. Smith, 166 Mass. 370, 375, 44 N. E. 503, 504:

"When according to common experience a certain fact generally is accompanied by knowledge of the further elements necessary to complete what it is the final object of the law to prevent, or even short of that, when it is very desirable that people should find out whether the further elements are there, actual knowledge being a matter difficult to prove, the law may stop at the preliminary fact, and in the pursuit of its policy may make the preliminary fact enough to constitute a crime."

In Carl v. State, 89 Ala. 93, 97, 8 South. 156, 157, this court expressly recognized the doctrine Judge Cooley stated when it said:

"The statute under which defendant is indicted makes the specific act of selling intoxicating bitters indictable, irrespective of defendant's belief, motive, or intention."

And it thereupon ruled that good faith, innocent intention, would not serve to exonerate a compounder and vender of medicine whose article was, within the terms of the statute, intoxicating. To a like recognition of the doctrine this court wrote in Compton v. State, 95 Ala. 25, 27, 11 South. 69, 70:

"Whether or not the cordial and tonic confessedly sold by appellant were medical preparations or an 'intoxicating decoction, mixture, compound, or bitters' was a question of fact for the jury, and the bill of exceptions states that the testimony for the state tended to show such was their nature. If so, the special statute prohibits their sale for medical purposes in express terms, whether such sale is made in good faith or not. By the provisions of this statute

it is the fact of a sale of the prohibited article, and not the intent with which the sale is made, the statute denounces. The specific act of selling intoxicating bitters, or other compounds such as are described in the statute constitutes the offense, irrespective of defendant's belief, motive, or intention. Ignorance of the character of the mixture, or even belief that it is not intoxicating, based on a mistake of fact, is no defense under this statute."

The same doctrine is illustrated in Commonwealth v. Mixer, supra, Wells Fargo Ex. Co. v. State, 79 Ark. 349, 96 S. W. 189, People v. Rice, 161 Mich. 657, 126 N. W. 981, and Welch v. State, 145 Wis. 86, 129 N. W. 656, 32 L. R. A. (N. S.) 746, among others readily accessible. And in Commonwealth v. Mixer, and Wells Fargo Ex. Co. v. State, supra, the stated doctrine was applied to cases disclosing circumstances involving like principles with those here brought under consideration by the phase of the bill wherein this carrier is sought to be restrained from delivering in Alabama whisky contained in receptacles of forbidden capacities. In the Mixer Case, after stating the pertinent general rule, it was said:

"But there are many instances in recent times where the Legislature in the exercise of the police power has prohibited under penalty the performance of a specific act. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute."

The circumstances of the case to which these pronouncements had application were that the defendant, a driver in the employ of a common carrier, had upon his dray for transportation in Lynn, Mass., a sugar barrel without marks upon it indicating, as the laws required, that it contained intoxicating liquor. The defendant was unaware that it contained liquor which to there transport, under the circumstances present, was made an offense by the laws of that state. There was nothing about the package to cause suspicion of its contents. The trial court refused to instruct the jury that, unless the defendant knew that the barrel contained intoxicating liquor or from its appearance and all the circumstances ought reasonably to have put him on inquiry as to its contents, he should be acquitted. The Supreme Judicial Court, applying the principle stated in the quotation ante, affirmed the action of the trial court in refusing to instruct the jury as indicated. The court there declined to read the statute as if it contained the words "willfully" or "knowingly," which to do would have changed the clear legislative purpose; would have, in effect, amended the statute. In Wells Fargo Ex. Co. v. State, supra, the Supreme Court of Arkansas made a like application of the principle. There are decisions that may be, or that must be read to a

contrary effect; but, in our opinion, the doctrine of the Roby, Mixer, and Wells Fargo Ex. Co. Cases is better grounded in reason, especially in view of the pertinent declarations of this court in the Carl and Compton Cases, ante.

[8] While approving the principle illustrated in Commonwealth v. Mixer and Wells Fargo Ex. Co. v. State, this court, because of the factor present in the provisions of section 240 of the federal Penal Code, set out hereinabove, does not feel justified in carrying its application in the circumstances of law and fact here involved to an otherwise logical conclusion, viz. that the carrier would be held to receive at the peril of offending the prohibitory and regulatory laws of Alabama consignments destined for transportation into and for delivery in Alabama that were free from cause for suspicion that they contained prohibited liquors or liquors in receptacles of forbidden capacities. Any other interpretation of the federal laws would so heavily burden interstate movements of innocent commerce as that it cannot be supposed that the lawmakers intended such an effect, in the absence of unequivocal statement of a different purpose. Section 240 prohibits, under penalty, the conscious introduction in interstate commerce of the liquors described therein unless the package containing such liquors "is [be] so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein."

[9] Unless otherwise advised either of the fact that an unlabeled package contained liquors within the description of section 240 or of circumstances reasonably calculated to arouse suspicion or inquiry with respect to that fact, the carrier to whom a shipment for transportation and delivery in Alabama is proffered may rely upon the absence from a package of the label required by that section as negativing the presence therein of forbidden liquors or liquors in receptacles of prohibited capacities. But this court has, however, accepted and applied a different rule, based upon a different construction or interpretation of a statute, where the criminality of the act charged depends upon a fact or circumstance, as an essential element of the offense, that one could not himself know otherwise than through information imparted to him by others. The case of Gordon v. State, 52 Ala. 308, 23 Am. Rep. 575, where the defendant was charged with voting before he attained voting age, illustrates this rule; the court there expressly recognizing the fact that knowledge of one's age can only be derived from the statements of others. The Adler Case, 55 Ala. 16, proceeded on the same theory. In both of these decisions the result was to read the statute as importing or implying the element of knowledge of the essential fact, viz. the nonvoting age of the defendant; and in consequence the court applied the further rule which exacts of a de-

fendant who voted when under voting age good faith, innocent intention in the premises, the conclusion upon which was held to be a question for the jury. The necessary application of the doctrine of these cases to those features of the bill which seek injunctive process to restrain the carrier from transporting or delivering in Alabama packages of liquors that were shipped in response to orders lawfully (if so) solicited cannot be justified or sustained in the absence of allegation that the carrier knew this fact; it being a fact, a condition the knowledge of the existence of which, to appropriate the discriminating idea expressed in Gandy v. State, 82 Ala. 61, 2 South. 465, the law does not impute to the carrier. Whether such orders were unlawfully solicited was an inquiry the means of solution of which cannot be attributed, even prima facie, to the carrier's possession. The fact that it knowingly accepted for transportation and delivery a lawful shipment of intoxicants does not warrant the inference even that it knew that some one interested in the liquor entertained an unlawful intent with respect thereto or that it was ordered through unlawful solicitation. Not so, as we have stated, where a view of the contents of the package, labeled under section 240, of liquors, would disclose the indubitable fact that the containers were of a capacity forbidden delivery or possession in Alabama.

The decision of this court in Sou. Ex. Co. v. State, 188 Ala. 454, 66 South. 115, was delivered in 1914, prior to the enactment of the laws prescribing and limiting the quantity of liquors and the size of the containers thereof one might have consigned to him in Alabama. In so far as the existence of the unlawful intention defined in the Webb-Kenyon Act is ascertainable by an inspection by the carrier of the package, known to it to contain liquors, tendered elsewhere for delivery in this state, that decision is inapplicable under the present law; but in the respect that it treats of the existence of such unlawful intention otherwise than may be manifested, indubitably disclosed by the contents of the package, its doctrine is in accord with our Gordon and Adler Cases.

The denials of the answer, the submission being on bill and answer only, efficiently negative the charges of the bill that improper deliveries were made. Besides, the absence of good faith on the carrier's part in ascertaining the identity of consignees is not established on the submission made.

The court below erred in refusing the writ of injunction restraining the appellee and its agents here from transporting and delivering in Alabama consignments of whisky labeled under the exaction of the provisions of section 240 of the federal Penal Code, contained in receptacles forbidden by the laws of Alabama. In all other respects the court below was justified in denying the writ of injunction as prayed in complainant's bill.

The decree appealed from is reversed, and the cause is remanded that the writ prayed for may issue to effect the restraint in the one particular indicated.

Reversed and remanded, with directions.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.